Holloway *et al. v.* Clark.

| 27 | 483 |
| 34a | 63 |
| 27 | 483 |
| 143 | 287 |
| 27 | 483 |
| 148 | 629 |
| 27 | 483 |
| 160 | 261 |
| 27 | 483 |
| e195 | ¹210 |

ROBERT HOLLOWAY *et al.*, Plaintiffs in Error, *v.* JOHN CLARK, Defendant in Error.

ERROR TO WARREN.

A clerk's or sheriff's deed on a tax sale is sufficient to show claim and color of title, if it appear on its face to be regular. The person relying upon it, is not bound to show that the pre-requisites of the statute have been complied with.

Holloway *et al. v.* Clark.

A quit-claim deed is sufficient to show claim and color of title under the limitation act of 1839.

H. obtained claim and color of title in 1842, and conveyed to B. in 1845. B. allowed the land to be sold for the taxes for 1847, and bought it himself; he then paid the taxes from 1849 to 1856 inclusive. P., the minor heir of a person who had died seized of the patent title, in 1853 redeemed from the sale of 1847, by paying to the clerk double the amount of the purchase money and all the taxes, with interest, for five years, being up to the time of the redemption. *Held,* that this redemption by P. entirely obliterated the tax sale of 1847, and the payment of taxes by B. for the five years, and that the grantees of B. could not defend under the limitation act of 1839, without showing payment of taxes for seven years, exclusive of the five years from 1848 to 1853.

The provisions of the limitation act of 1839, empowering minors to redeem land sold for taxes, within three years after attaining their majority, by paying to the person who has paid the tax, the amount with interest, do not take from the minor the right to redeem within one year after his majority, by paying double the amount, etc., to the collector, according to Sec. 69, Chap. LXXXIX, Rev. Stat. 1845.

A person whose lands had been sold for taxes during his infancy, for the purpose of redeeming them, after he attained his majority, paid the necessary amount to the clerk. The purchaser accepted this money from the clerk. *Held,* that by that act, he admitted the right of the infant to redeem under the statute.

THIS was an action of ejectment, commenced by the plaintiffs in error, against the defendant in error, in the Warren Circuit Court, to recover possession of S. W. 17, 8 N., 3 W., on the 28th day of May, 1857.

The cause was tried by TYLER, Judge, and the issue found for defendant, and judgment rendered against the plaintiffs for costs.

On the trial, the plaintiffs proved a regular title in fee from the Government, commencing by patent, dated October 6, 1847, to the plaintiffs, ending with a deed from James W. Perkins to plaintiffs, dated 24th April, 1857.

It appears by the evidence that the plaintiff's title was vested in James W. Perkins, heir of James Perkins, from 13th July, 1844, to the 10th March, 1852; that he then conveyed to Peter S. Hoes, who held the title till 23rd November, 1852, when he conveyed to Clarissa Perkins, the mother of James W. Perkins; that Clarissa Perkins died seized of the land, 10th August, 1854, whereby the land passed by inheritance again to James W. Perkins, who subsequently conveyed to plaintiffs. Possession was admitted.

The defendant then offered to read, as claim and color of title, a deed from the county commissioners' clerk, to A. C. Harding, dated 22nd March, 1841, reciting a sale for taxes of 1838, the sale made by the clerk on the 9th March, 1839; and also another deed as claim and color of title from the sheriff to A. C. Harding, dated 30th December, 1842, reciting a sale for taxes of 1839, made 18th May, 1840, by the sheriff.

The plaintiffs objected to each of these deeds, but the court overruled the objection, and allowed them both to be read, to which the plaintiffs excepted.

The defendant then read a quit-claim deed from A. C. Harding and wife to Nathan Brainard, dated 26th August, 1845.

The defendant then proved the payment of the taxes of 1848, on the 28th May, 1849; taxes and costs, $6.04; also the taxes and costs of 1849, $2.16; also the taxes and costs of 1850, $2.84; also the taxes and costs of 1851, $2.41; also the taxes and costs of 1852, $2.65; also the taxes and costs of 1853, $4.80; also the taxes and costs of 1854, $3.54, made January 29th, 1855.

The defendant then read in evidence a contract, dated 10th April, 1856, between Nathan Brainard and Joseph Godfrey, showing a sale of the premises by Brainard to Godfrey, for the sum of $500, in annual payments, the first due 1st January, 1857, and that upon the payment, a deed was to be made, with covenants against his own acts.

The defendant then proved an assignment of contract by Godfrey to defendant before the suit was commenced, and for a good consideration.

It was admitted that the land was vacant and unoccupied before July, 1856, when the defendant took possession under the assignment of the contract, and has been in possession ever since.

The plaintiffs then proved that the land was sold on the 30th May, 1848, for the taxes of 1847, to Nathan Brainard, for the sum of $3.77.

They further proved a deposit with the county clerk, as redemption money, by James W. Perkins, as a minor heir of James Perkins, on the 19th February, 1853, the sum of $7.54, as double the amount of the purchase money, and the sum of $19.15 for the taxes of 1848, 1849, 1850, 1851, and 1852, with the interest thereon.

The plaintiffs then proved, that no payment was made by Godfrey or other persons, upon the contract with Brainard, at the time it was made, and that the first payment was made January 1st, 1857.

They further proved, that after the contract was made with Godfrey, and before the first payment thereon, Brainard received and accepted the redemption money from the county clerk, and receipted therefor on the books of the office.

The court found the issue for the defendant. The plaintiffs moved for a new trial, which was overruled, and the plaintiffs excepted.

Judgment was rendered for the defendant, to which plaintiffs excepted.

The plaintiffs in error now bring the case to this court by writ of error, and assign as errors the following, to wit: The Circuit Court erred in finding the issue for the defendant; in overruling the motion for a new trial; and in rendering judgment for the defendant and against the plaintiffs in error.

W. C. GOUDY, for Plaintiffs in Error.

GEORGE F. HARDING, for Defendant in Error.

WALKER, J. The tax deed, as well as the quit-claim deed, relied upon in this case, were color of title. They, on their face, purport to convey and transfer the title to the land. Nor is a person relying upon a clerk's or sheriff's deed, on a tax sale, as has been repeatedly held by this court, bound to see that all the pre-requisites of the law have been answered, before he can rely upon it as claim and color of title. If it appears on its face to be regular, that will suffice. When it so appears, the party is not required to go beyond the deed to see whether it actually passes title or is void. If it was otherwise, this statute would be useless, and would fail to afford the protection designed to be extended by the General Assembly in its adoption.

. So of a quit-claim deed, if the grantee were required to see that it passed paramount title, before he could rely upon it as color, he would not need the protection of the statute. All know, that a quit-claim deed is as effectual to pass title, as a deed containing full covenants. A deed of release passes all of the grantor's title, and a deed of bargain and sale, with full covenants for title, conveys no more, or greater estate. The covenants form no part of the operative part of the deed, to pass title, but obliges the grantor, on the failure of the title, or breach of any covenant, to make it good, by compensation in damages. All persons in the community know that a quit-claim deed conveys the grantor's title, and it purports to have, and has, that effect. We all know that the language used in a deed of bargain and sale cannot enlarge the estate granted, but only purports to convey the grantor's title. This the quit-claim deed does, by another mode of expression. In law, they both purport to accomplish the same thing, independent of the effect of the covenants. We have, therefore, no hesitation in saying that a deed of release is claim and color of title, within the limitation law of 1839.

It appears from this record, that Brainard, under whom de-

fendant below claims title, paid all taxes legally assessed upon the land in controversy, from the year 1849 to 1856, inclusive, a period of full seven years. That he, during that time, held a quit-claim deed from Harding. It also appears that James W. Perkins, a minor heir of James Perkins, deceased, who died seized of the patent title to this land, on the 19th day of February, 1853, redeemed this land, from the sale for taxes in 1847, by paying to the clerk double the amount of the purchase money, together with all of the taxes which had accrued, after the sale and up to the date of the redemption. His father had died in 1844, and the patent title thereby vested in his son, who, being a minor, had, under the statute, the right, within one year after arriving of age, to redeem from any tax sale which occurred after his father's death. Brainard recognized this right by receiving the redemption money, after the expiration of seven years from his first payment of taxes, and after he had contracted to sell the land to defendant below. Perkins, unquestionably, whilst a minor, or within one year after attaining his majority, had the right to redeem from the tax sale of 1847, upon the terms and in the mode prescribed by the statute. By such a redemption, the law has provided that the sale shall be canceled. And it, by the same means, obliterates the payment of the taxes precisely as it does the sale. The person redeeming, pays the taxes to the clerk, to whom he is required to make the payment by the statute, on a redemption. The statute calls it a payment of taxes, and we are not authorized to call it anything else. When this redemption was made, and the sale and Brainard's payment of taxes was canceled, the relation of the parties became precisely the same as if the sale, or payment of taxes by Brainard, had never occurred. By that redemption, all of his rights, whether under the tax sale or his payment of the taxes, were entirely obliterated and ceased to exist. And this too, whether he received the money or not, as it is the redemption in pursuance to law, and not his acceptance of the money, which produces that effect.

To render his color of title available, therefore, it was necessary that he should have paid all taxes legally assessed for seven successive years after the redemption was made. The previous payments having been canceled by the redemption, they cannot be counted as a part of the payment for seven years. Such a payment of taxes, thus canceled, could not have been contemplated by the General Assembly as forming a portion of those required to be computed. Those payments had been rendered null for every purpose. On the redemption having been made, the money paid for that purpose be-

came that of Brainard, absolutely and unconditionally. Perkins could not at any time have resumed it, or in any manner have controlled it. The clerk, under the law, was Brainard's agent to receive the money, and when legally paid, he is as much bound as if the clerk had been expressly appointed by him for that purpose. And this was as effectual to obviate the effect of the payment of taxes as if the minor had paid it directly to Brainard, under the provisions of the limitation act of 1839. The provisions of this act were not designed to, nor do they, take from the minor the right to redeem from a tax sale, in the ordinary mode, but it was designed to afford the means of destroying the bar, of the statute, to the same extent as if he had made an entry before the bar became complete.

It was also the design of the statute to give the minor three years after arriving at age within which he might exercise this right, whether there had been a sale or not, whilst under the general law he was compelled to redeem within one year after his majority. This provision does not conflict with, but it enlarges the rights which the minor previously had under the law authorizing a redemption, as he may resort to either mode in case of a previous tax sale. This redemption was, we have no doubt, as effectual as if the payment had been made under the provisions of this limitation law. Then, excluding the payments included in the redemption, there is not a payment of all taxes legally assessed for a period of seven successive years, but three only, concurring with the color of title, under the statute. There not being a payment of taxes for seven successive years, under color of title, the bar of the statute has not been created, and the court below erred in rendering judgment for the plaintiffs. That judgment is therefore reversed, and the cause is remanded.

*Judgment reversed.*