## ALVISO *v.* UNITED STATES.

1. Where a Mexican grant of land in California designates the land granted by a particular name, and specifies the quantity, but does not give any boundaries, the grantee is entitled to the quantity specified within the limits of his settlement and possession, if that amount can be obtained without encroachment upon the prior rights of adjoining proprietors.

2. When the evidence upon a boundary line, between two Mexican grants, is conflicting and irreconcilable, this court will not interfere with the decision of the court below.

3. Parties not claiming under the United States, who are allowed to intervene in proceedings of the District Court to correct surveys of Mexican land grants in California, under the act of June 14th, 1860, must claim under cessions of the former Mexican government. The order of the District Court, allowing a party thus claiming to intervene, is a determination that he possesses such interest derived from that government as to entitle him to contest the survey; and objection to his intervention, on the ground that he possesses no such interest, cannot be taken for the first time in this court.

4. The United States cannot object to the correctness of a boundary line in an approved survey, if they have not appealed from the decree approving the survey.

THIS was an appeal from a decree of the District Court of California, approving a survey of a confirmed Mexican land claim. There were two grants issued by the Mexican government to the claimant.

The original grant, issued in September, 1835, described the land ceded as known by the name of Milpitas, and as being one league in length, from north to south, and one-half a league in width, from east to west, and being in extent equal to half a square league, as shown by the accompanying map. The second grant, issued in October following,

added a half league to the·original quantity on the west, so as to make the entire tract ceded a square league. The second of these title-papers, merely adding to the quantity originally granted, the two are spoken of in the opinion, as constituting one concession or grant.

Neither of the title-papers gave any boundaries of the land, or referred to any documents by which the boundaries could be ascertained, except the map mentioned. This map was a rude and imperfect sketch, indicating only the general locality of the land, without fixing, with any precision, its exterior limits.

The decree of the District Court upon the claim of the grantee did not give the boundaries of the claim. It adjudged the claim to be valid, to the extent and quantity of one square league, provided that quantity be contained " within the boundaries called for in the grants," and the map to which they referred; and if there were less than that quantity, then the confirmation was to be restricted accordingly. But no boundaries were, in fact, stated in the grants. The decree also declared the tract confirmed to be the land " of which the possession was proved to have been long enjoyed " by the claimant. The proof here mentioned, only showed that the claimant had been, for many years, in possession of some of the land granted to him, without mentioning any boundaries of the land, or indicating that any were established.

Three surveys of the claim were made by different surveyors, and submitted to the District Court for examination and approval; and in relation to each of them, testimony was taken and counsel were heard, either upon the intervention of the United States, or of the claimant, or of adjoining proprietors.

The first two surveys were set aside, and the questions presented arose upon the third survey. One Higuera owned a tract on the north, and it appeared, from the evidence, that the boundary line between him and Alviso, at one time in dispute, was settled and fixed, under the Mexican government. On the west, one White owned a tract, as confirmee

Opinion of the court.

of a grant known as *Rincon de los Esteros,* and a creek, known as Penetencia Creek, was the boundary between him and Alviso. The questions on this case related to the southern boundary of the tract of the claimant, and upon this the evidence was conflicting and irreconcilable. One Berrysea claimed the land on the south; and he intervened in the proceedings upon the survey in the District Court, by leave of the court. In his petition for permission to intervene, he alleged that he was the owner of the rancho on the south of the claim of the claimant, as surveyed under title derived from the Mexican government; that the creek Milpitas was the boundary between his rancho and the rancho confirmed to the claimant, and that the survey of the claimant's claim included about fifteen or eighteen hundred acres of land belonging to him. There was no other evidence in the record that Berrysea had any grant.

The appeal was by the claimant.

*Mr. Bradley, for the appellant; Mr. Wills, contra*

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

In the case of *Higueras* v. *United States,*\* this court speaks of concessions or grants of public lands, made by Mexican governors, as being of three kinds: 1st, Grants by specific boundaries, where the donee was entitled to the entire tract; 2d. Grants by quantity, as of one or more leagues of land situated in a larger tract, described by out-boundaries, where the donee was entitled only to the quantity specified; and 3d. Grants of a certain place or rancho by some particular name, either with or without specific boundaries, where the donee was entitled to the tract, according to the boundaries, if given, and if not given, according to the limits of the tract, as shown by the proofs of settlement and possession.

The grant in the case before us, partakes of the two latter classes. It is a grant by quantity, and the claimant is en-

---

\* 5 Wallace, 827.

titled to the amount specified, if that amount can be obtained without encroachment upon the prior rights of adjoining proprietors. It is also a grant of a certain place by name, and as the boundaries are not given, its extent and limits must be shown by the settlement and possession of the grantee.

The correctness of the ruling of the court in setting aside the first survey is not questioned; and the appellant himself united with adjoining proprietors in excepting to the second survey. The testimony taken established, with sufficient distinctness, the northern and western boundaries, as fixed by the third and approved survey. It showed that the northern boundary, between Alviso and Higueras—at one time, a matter of dispute between them—was settled and fixed under the Mexican government, and that the Penetencia Creek was the dividing line on the west, between Alviso and White, the confirmee of the grant of Rincon de los Esteros.

But as to the southern boundary—the boundary between Alviso and Berrysea—the testimony was conflicting and unsatisfactory. Indeed, it is impossible to reconcile the different statements of the witnesses as to the extent of the occupation of either party, south of Milpitas Creek. Some of them testified that the possession of Alviso extended far south of it, whilst others asserted that the creek itself was recognized, both by him and Berrysea, as the boundary between them. The contradictions are so flat that the counsel of the appellant is forced to state that the mind is left in uncertainty whether there was any exclusive occupation of the land by either of the parties. Under these circumstances, there being great doubt as to which side the weight of evidence inclines, we should not be justified, under any rules governing our action upon such cases, in interfering with the decision of the District Court.

The counsel of the appellant objects that there is no evidence in the record that Berrysea had any grant, or if he had any, that it was ever confirmed, and insists that no weight should therefore be given to his possession against the claim of the appellant. This objection cannot be made

for the first time in this court.   The right of Berrysea to
contest the survey originally made, and the nature of his
interest, were determined by the District Court on his appli-
cation to intervene.   The act of June 14th, 1860, provides
for the return into court of surveys for examination and ad-
judication upon the application of parties who, in the judg-
ment of the District Court or judge, have such interest in
the survey and location as to render it proper for them to
intervene for its protection.   It enacts that where objections
are advanced by the United States, the application shall be
made by the district attorney, and be "founded on sufficient
affidavits," and that when the application is made by "other
parties claiming to be interested in, or that their rights are
affected" by the survey and location, there shall be a pre-
liminary examination into the fact and nature of such alleged
interest.   "The court or judge in vacation," says the statute,
"shall proceed summarily, on affidavits or otherwise, to
inquire into the fact of such interest, and shall, in its discre-
tion, determine whether the applicant has such an interest
therein as, under the circumstances of the case, to make it
proper that he should be heard in opposition to the survey,
and shall grant or refuse the order to return the survey and
location as shall be just."   When the interest of the appli-
cant is shown and the order is made, those who claim under
the United States, whether by "pre-emption settlement or
other right or title," must intervene in the name of the
United States, and be represented by the district attorney
and counsel employed by them acting with him.   All other
parties not claiming under the United States and allowed to
intervene, must necessarily claim under cessions more or
less perfect of the former Mexican government.   In the case
at bar, when the original survey was made, Berrysea applied
for and obtained an order for its return into court.   In his
petition he set forth that he was the owner of the rancho
south of the claim surveyed, under title derived from the
Mexican government, that the creek Milpitas was the boun-
dary between his rancho and the rancho confirmed, and that
the survey included about fifteen or eighteen hundred acres

of land belonging to him. The order of the court made thereon necessarily involved under the statute a determination that he possessed such interest, derived from the former government, as to render it proper that he should be heard in opposition to the survey. His right to contest the survey, founded upon the interest alleged, was then settled. The claimant might, perhaps, have subsequently insisted that the intervenor had no such interest as to give him a right to object to the survey, and have asked on that ground for a revocation of the order. But not having taken any such course, he cannot now object to the position of the intervenor as a contestant. As contestant, the intervenor could, of course, show his own occupation of the land in dispute to meet and overthrow the pretensions of the claimant founded upon his asserted possession of the premises.

As to the eastern boundary of the approved survey, we are not entirely satisfied that it is correct. There is much force in the position that this boundary should run along the base of the hills, and not embrace any portion of their sides. But the United States, who might have interposed an objection of this character, have not appealed from the decree approving the survey in its present form. They cannot, therefore, raise any objection to its correctness now.*

Upon the whole case, we are satisfied that the survey approved, is as favorable to the appellant as any which the evidence would justify. The decree sustaining that survey must therefore be

AFFIRMED.

---

* Fossat Case, 2 Wallace, 649.