[Civil No. 230.   Filed April 6, 1889.]

[21 Pac. 177.]

## UNITED STATES OF AMERICA, Plaintiff and Appellee, v. COLIN CAMERON, Defendant and Appellant.

1. PUBLIC LANDS—MEXICAN GRANTS—EVIDENCE—REPORT OF SURVEYOR-GENERAL—ACT JULY 15, 1870 (16 STATS. AT LARGE, 304), AND ACT JULY 22, 1854, CITED.—The report of the surveyor-general upon a Mexican grant is not competent evidence for any purpose.

2. SAME—SAME—WITHDRAWAL—ACT OF 1870.—Act of 1870, *supra*, does not confer power upon the surveyor-general or the secretary of the interior to reserve from sale lands claimed to be within a valid Mexican grant.

3. MEXICAN GRANTS—KINDS—STRICTLY CONSTRUED.—Mexican grants
are of three kinds: (1) specific boundaries, (2) by quantity, or
(3) grants of a certain place by name, with or without boundaries.
This grant is of the second class. The *expediente* partakes largely
of the nature of a judicial sale, and should be strictly construed.
The rule that where there is a doubt as to what is conveyed, and
the boundary is certain, but disagrees with the quantity mentioned,
the latter is disregarded, and cannot be invoked where its applica-
tion would defeat the evident intent.

4. PUBLIC LANDS—FENCING—COLOR OF TITLE—NO ADVERSE POSSESSION
AS AGAINST THE UNITED STATES—GRANT—CONSTRUCTION—COLOR BY
DEED LIMITED—COLOR DEFINED—"CLAIM OR COLOR" MEANS COLOR
OF TITLE—VALIDITY TO BE DETERMINED BY COURT—EVIDENCE RE-
VIEWED AND FENCE HELD UNLAWFUL INCLOSURE UNDER ACT OF
FEB. 25, 1885, CH. 149, SECS. 1, 2, 23 U. S. STATS. AT LARGE, 321.—
Defendant claims to own the land fenced under grant. He had no
exclusive occupation prior to the building of the fence, nor can he
hold by trespass, and acquire adverse title as against the United
States and defend the right to fence by claim or color of title so
acquired. His claim or color of title is based on his paper title,
which is the *expediente*. No one can claim color of title by deed,
when entering upon land, beyond what his deed purports to convey.
Color of title is where there is an apparent colorable title under
which an entry or claim has been made in good faith. "Claim and
color" mean the same as color of title. Where the defendant claims
the right to fence upon a claim or color of title derived from paper
title, the court has the power to ascertain the extent thereof, but not
the validity of the grant, and when it further appears that the lands
fenced are far from the lands described therein and include no
lands ever occupied by, or in the possession of, the defendant under
the deed, such cannot be a claim or color of title and the fence
so erected is an unlawful inclosure of the public lands.

DISMISSED.—146 U. S. 533, 36 Law Ed. 1077, 13 Sup. Ct. Rep. 184.

REINSTATED AND REVERSED.—148 U. S. 301, 37 Law Ed. 459, 13 Sup.
Ct. Rep. 595.

APPEAL from a judgment of the District Court of the
First Judicial District in and for the County of Pima.
William H. Barnes, Judge. Affirmed.

The facts are stated in the opinion.

Jeffords & Franklin, and Rochester Ford, for Appellant.

O. T. Rouse, United States District Attorney, for Appellee.

BARNES, J.—This is a civil suit in which plaintiff alleges that defendant has unlawfully inclosed a portion of the public lands in violation of sections 1 and 2 of the act entitled "An act to prevent unlawful occupancy of the public lands," approved February 25, 1885. The defendant admits the construction of a fence at the place alleged, but denies that the lands inclosed are public lands, and alleges that they are within the boundaries of the private land claim San Rafael de la Zanja, a Mexican grant, which has been filed with the surveyor-general of Arizona, as is provided for in the act of July 15, 1870, (16 Stats. at Large, 304). There it is provided that it shall be the duty of the surveyor-general of Arizona, under such instructions as may be given by the secretary of the interior, to ascertain and report upon the origin, nature, character, and extent of the claims to lands under the laws, usages, and customs of Spain and Mexico; and for this purpose he shall have all the powers conferred, and shall perform all the duties enjoined, upon the surveyor-general of New Mexico by the eighth section of the act entitled "An act to establish the offices of surveyor-general of New Mexico, Kansas, and Nebraska, to grant donations to actual settlers, and for other purposes," approved July 22, 1854, and his report shall be laid before Congress for such action thereon as shall be deemed just and proper. In the petition the claimants urged or laid claim to about sixteen square leagues, or about 117,000 acres, of land. As evidence thereof they filed with their petition title papers called an "*expediente.*" The surveyor-general reported that the claim was valid, and that the amount of land conveyed was four square leagues,—three in a line north and south, and one to the west of the southern square league. His report was laid before Congress, where the same awaits action. It is insisted that the report of the surveyor-general is not competent evidence for any purpose, and it is so held in *Pinkerton* v. *Ledoux*, 129 U. S. 346, 9 Sup. Ct. Rep. 399.

This case has been argued by counsel upon the assumption that the act of 1870 above quoted is the same as the act of 1854, referred to in the act of 1870. They, however, are not the same, but differ very materially. In the former law it was provided: "And until the final action of Congress on

such claims, all lands covered thereby shall be reserved from sale or other disposal by the government.'' This provision was omitted from the act of 1870. It was by this provision of the act of 1854 that lands were reserved. As this provision is not retained, we must infer that it was omitted intentionally; that it was not intended that lands should be reserved. And no authority is given the surveyor-general or the secretary of the interior to reserve from sale lands that were claimed to be included within a valid Mexican grant. In other words, it is evident that Congress intended to retain control over the whole question, and to delegate to no one beyond the limit of the terms of the act. *Botiller* v. *Dominguez,* 130 U. S. 238, 9 Sup. Ct. Rep. 525. The claimant under a grant acquired no higher, broader, or better right by the act of 1870. The act simply afforded him a tribunal, and a procedure to enforce his rights under the grant. It did not give him the right to fence he did not have before, nor does the act of 1885 confer any right to fence. It prohibits the inclosure of the public lands. In *Ryan* v. *Railway Co.,* 99 U. S. 388, the court says that lands embraced in such a claim (a Mexican grant) are to be regarded as forming a part of our public domain, only after the claim conveying them has been finally rejected. But what is the ''claim''? Is it the petition of the claimant? If so, this fence is within what he claims. If the petition mark the limits of the claim, then we are led to the absurd conclusion that under a valid grant for a few acres a claimant in his petition may insist upon a vast domain, no matter how wide, and at once fence it up, exclude everybody else from it, and retain the uses and profits of it until Congress shall act. No one can contend for a moment for such a construction of the acts of 1870 and 1885. With every claim filed with the surveyor-general are filed the title papers upon which the claim is based, as a part of it, and the lands therein described as granted thereby are the lands embraced in the claim. This brings us necessarily to a consideration of these title papers, and forces the court to a construction of the same, to see what lands are actually granted, as a measure of the claim and color of title.

Concessions or grants of land by Mexican governors were of three kinds. They were concessions or grants by,—1.

Specific boundaries, where of course the donee is entitled to the entire tract; 2. Or grants by quantity, as of one or more *sitios* of land situate at some designated place, or within a larger tract, described by what are called "out boundaries," where the donee is entitled to the quantity specified, and no more; or, 3. Grants of a certain place or rancho, by some particular name, either with or without specific boundaries. *Higueras* v. *United States*, 5 Wall. 834; *Hornsby* v. *United States*, 10 Wall. 232; *Alviso* v. *United States*, 8 Wall. 339. With great ability and learning, counsel for defendant has urged that this claim belongs to the first class. We are not able, however, to concur with this view, but must retain the opinion that it belongs to the second class. The Fremont case, 17 How. 542, was held to belong to the second class. Hornsby's case, 10 Wall. 232. That was a petition for 10 *sitios* (*sitios de ganada mayor*) north of a river, within the Sierra Nevada in the east part of Merced, on the west with the name "Mariposas," and the grant was to a tract of land known as the "Mariposas" within the limits before described. This grant is very similar to the one at bar, except that there was no survey of the place. This was held to be a grant of ten *sitios*, and the boundaries were held to no more than locate the place. *United States* v. *Pico*, 5 Wall. 539, is a case of the first and third class,—a grant by boundaries, where the grant gives the boundaries, with no limitations as to the amount. "When in Mexican grants boundaries are given, and a limitation upon the quantity embraced within the boundaries is intended, words expressing such intention are generally used. Thus in Fremont's case the boundaries embraced many *sitios* more than the quantity granted. Pico's case, 5 Wall. 539. Higueras' case, 5 Wall. 834, was of the latter class. In Yontz's case, 23 How. 498, it was held in adjudicating these grants that it is proper to look at all the several parts and ceremonies necessary to complete the title, and to take them as one act;" that "this court has uniformly held . . . that the petition to the governor for land and his concession must be taken as one act, and the decree usually proceeded on the petition which described the land, as re-spected locality and quantity." In that case "the application was for two leagues, more or less, according to the bound-

aries of said mission of San José." The judgment of the court restricting the grant to two *sitios* was affirmed. Fossat's case, 20 How. 415, was a grant of a portion of the place known by the name "Los Capitancillos," and the portion thereof confirmed is bounded and described as follows, to wit, (boundary) "the said premises containing three fourths of a square league of land, a little more or less." Counsel in that case urged the same grounds as here, and cited the same cases. Page 423. But the court decides: "We reject the words 'a little more or less,' as having no meaning in a system of location and survey like that of the United States, and that the claim of the grantee is valid for the quantity clearly expressed." Had it not been so clear, the court say, "it might have been proper to refer to the petition and the *diseno*. . . . But there is no necessity for additional inquiries. The grant is not affected with any ambiguity." It was held to be a grant for three fourths of a *sitios,* or square league. In D'Aguirre's case, 1 Wall. 316, the grant mentioned no quantity, and reserved no surplus, and the court say the boundary must govern. The above-cited cases came up from California under the laws of the Mexican republic. The claim before us was petitioned for of the Spanish government, but the final decree was made by officers of the republic. The laws were not, however, materially changed. The term *"sitio ganado mayor"* is a technical Spanish and Mexican legal term, as well established, defined, and known as a section or township in the surveys of the United States. It was a square, "the four sides of which each measured 5,000 *varas.*" Hamilton's Mexican Law, 103. "The distance from the center of each *sitio* to each of its sides should be measured directly to the cardinal points of the horizon, and should be 2,500 *varas.*" This term is found in the case before us, as well as in the cases cited. A conveyance of a *sitio* deeded as certain a form and quantity of land as a conveyance of a section. To convey a section would always mean a square, the sides pointing to the four cardinal points, each one mile in length, containing 640 acres.

In this case a grant of four *sitios* is asked for, and nowhere throughout the whole *expediente* is any other quantity mentioned, and in the final decree the *habendum* clause grants

four *sitios*. The price *per sitio* is appraised, three at $60, as having water, and one at $30. The whole *expediente* partakes largely of the nature of a judicial sale, and should be construed by the same rules, that is, strictly. 2 Blackstone's Commentaries, 347; *Hyman* v. *Read,* 13 Cal. 445; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 589. It is a procedure provided by law, invoked by grantee's petition, and should not be construed as a private deed or conveyance. The whole record should be taken and construed together, in order to determine what is granted. So construing the same, it is evident that this is a grant of four *sitios* at the place San Rafael de la Zanja, and no more.

It is urged that the words of limitation, viz., four *sitios,* are to be disregarded as *falsa demonstratio non nocet,* and the survey be treated as measuring the land conveyed, and, as that includes sixteen, instead of four, *sitios,* that must govern. We are aware of the principle invoked, that where there is a doubt as to what is conveyed, and where the boundary is certain and disagrees with the quantity mentioned, the latter is false *non nocet.* But this rule is established, and can be invoked, only to aid the evident intent. Where to apply the rule defeats the evident intent, it is disregarded. Cases cited *supra.* And see *Webb* v. *Webb,* 29 Ala. 606; *Davis* v. *Rainsford,* 17 Mass. 210; *Jackson* v. *Loomis,* 18 Johns. 81; *Norwood* v. *Byrd,* 1 Rich. 135, 42 Am. Dec. 406; *Jackson* v. *Blodget,* 16 Johns. 172; *Proctor* v. *Pool,* 4 Dev. (15 N. C.) 370. Four *sitios* at the place La Zanja can be no other than the four *sitios* that touch that point; that is, that corner there. Any other construction makes this grant void for uncertainty. *Shackleford* v. *Bailey,* 35 Ill. 391; *Peck* v. *Mallams,* 10 N. Y. 530.

It is urged, however, against this view that the act of 1885 prohibited all inclosures of any public lands by any person who had "no claim or color of title thereto, made or acquired in good faith." And it is insisted that defendant claims to own the lands fenced, and has urged his claim by petition to the surveyor-general under the act of 1870, who has reported thereon, and that the claim is pending before Congress; that this is the very question there pending; that his right thereto is the question in dispute; that that is the tribunal established

for the consideration of the validity and extent of his grant;
that defendant urges before that tribunal that construction of
this *expediente* which leads to a confirmation of his title to
these lands; in short, that defendant has a claim and color
of title to the lands fenced, and, if so, is not prohibited to
fence the same by the act of 1885. The evidence in this case
shows that prior to the erection of the fence defendant had
no exclusive possession of these lands. They were open, un-
fenced, and apparently a part of the public domain. Cattle
roamed and grazed over them. The only occupation defend-
ant could claim was that cattle bearing his brand were ranging
there. There was nothing to hinder other cattle ranging
there. These acts do not constitute an open, notorious, and
adverse possession of which all are charged with notice. To
determine whether defendant had claim or color of title we
are driven to the deed or *expediente,* upon which his color
is based, and by which he justifies. By possession or occu-
pation he can acquire no claim or color of title as against the
United States. He cannot hold by trespass, and acquire an
adverse title, and defend the right to fence by claim or color
of title so acquired. But we have seen he has not such
possession, adverse to the United States or anybody else. His
claim or color of title can be based upon nothing but the
paper title under which he claims, which is the *expediente.*
He invokes it for his benefit. By virtue of it he fenced the
lands, and asserted right thereto. The court was driven
then to look into his paper title to see what lands are con-
veyed, and hence to a construction thereof. *United States
v. Cattle Co.,* 33 Fed. 323. No one can claim color of title
by deed, when entering upon land, beyond what his deed
purports to convey. *Woods* v. *Banks,* 14 N. H. 111; *Brooks*
v. *Bruyn,* 35 Ill. 394; *Shackleford* v. *Bailey,* 35 Ill. 391;
*Russell* v. *Erwin,* 38 Ala. 48; *Minot* v. *Brooks,* 16 N. H. 376;
*Tate* v. *Southard,* 3 Hawks 119, 14 Am. Dec. 578. Color of
title is where there is "an apparent colorable title under
which an entry or claim has been made in good faith."
*Wright* v. *Mattison,* 18 How. 56; *Edgerton* v. *Bird,* 6 Wis.
527; *Thompson* v. *Cragg,* 24 Tex. 594; *Bernal* v. *Gleim,* 33
Cal. 676; *Beverly* v. *Burke,* 9 Ga. 443, 54 Am. Dec. 351;
*Rannels* v. *Rannels,* 52 Mo. 112. In Illinois, a statute of

limitations created a bar in favor of one in actual possession of lands under claim and color of· title made in good faith. This statute is the same as the act of 1885, except that this act uses the words "claim or color," etc. It was held that these words mean the same as color of title, and the possession must be under a deed purporting to convey the lands claimed. *Woodward* v. *Blanchard,* 16 Ill. 433; *Dawley* v. *Van Court,* 21 Ill. 460; *Holloway* v. *Clark,* 27 Ill. 483; *Morrison* v. *Norman,* 47 Ill. 477; *Huls* v. *Buntin,* 47 Ill. 400; *Dickenson* v. *Breeden,* 30 Ill. 325; *Cook* v. *Norton,* 48 Ill. 20; *Chickering* v. *Failes,* 26 Ill. 519; *Laflin* v. *Herrington,* 16 Ill. 301; *Hinkley* v. *Greene,* 52 Ill. 227; *Dolton* v. *Erb,* 53 Ill. 289; *Fritz* v. *Joiner,* 54 Ill. 101; *Shackleford* v. *Bailey,* 35 Ill. 391. And it was decided that the court must determine the validity of the color of title. *Shackleford* v. *Bailey,* 35 Ill. 391; *Blanchard* v. *Pratt,* 37 Ill. 245. See note to *Tate* v. *Southard,* 14 Am. Dec. 580. There can therefore be no doubt as to the power of the court to look into defendant's paper title, when he defends his right to fence these lands upon a "claim or color of title" derived from this paper title, to ascertain the extent thereof, but not the validity of the grant. As we have said above, the lands fenced are far away from the four *sitios* cornering at the point La Zanja, and include no lands ever occupied by, or in possession of, defendant under the deed. The evidence shows that the defendant occupies a ranch-house, outbuildings, and *corral,* in all a few acres, at La Noria, and another on another part of the premises claimed, and that cattle are pastured on the surrounding domain. The lands fenced are several miles away from any habitation or actual occupation. Such cannot be a claim or color of title in any sense. The fence so erected was an unlawful inclosure of the public lands. We see no error in the judgment, and the same must be affirmed.

Wright, C. J., and Porter, J., concur.