349 P.2d 1107

Harvey L. FRITTS and Ione Fritts, his wife, Appellants,

v.

A. G. ERICSON and Maude M. Ericson, his wife, Appellees.

No. 6553.

Supreme Court of Arizona.

March 9, 1960.

Langmade & Sullivan, and Larry Doyle, and Otto H. Linsenmeyer, Phoenix, for appellants.

Locklear & Wolfinger, Prescott, for appellees.

UDALL, Justice.

This is an appeal from a judgment entered in an action instituted by plaintiff for ejectment of defendant from certain real property, to which a counterclaim was filed by defendant wherein he sought to quiet title to the disputed property against plaintiff. The trial court held adversely to the plaintiff in the ejectment action, and entered judgment quieting title in the defendant on his counterclaim and awarding damages in the sum of $100. This appeal followed.

The case arose as follows: Harvey Fritts and Ione Fritts, his wife, plaintiffs below

and appellants herein (henceforth denominated plaintiff), sought to eject defendants-appellants—A. G. Ericson and his wife Maude M. Ericson (hereinafter called defendant)—from certain land in Yavapai County described in the complaint as:

"That parcel of land lying between the true section line forming the south boundary of Section 12, T14N, R2W, of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, and the Waara line, approximately 400 ft. north of the aforesaid true section line, and lying west of the westerly right of way line of U.S. Highway 89 and east of the west line of the E½ of the SW¼ of Section 12, as well as all properties lying immediately to the north of the aforesaid described property, and upon part of which the defendants have erected commercial buildings."

Plaintiff also prayed for damages and costs. This small tract (not more than an acre or two) lies within the SE¼ of SW¼ of Section 12, which property is included in plaintiff's deed acquired January 7, 1956, from the Western Motels, Inc. Note: it is shown as Lot 1 of Pltf's Exh. No. 29.

Defendant in his answer denied any encroachment upon the land described in plaintiff's complaint and counterclaimed (improperly designating it a "crossclaim") to quiet title to various lands in the area—the legal title to which had been acquired by him in the year 1936 from LeRoy Anderson. This included, inter alia,

"All that portion of the Northeast Quarter of the Northwest Quarter (NE¼ NW¼) of Section Thirteen (13), Township Fourteen (14) North, Range Two (2) West, G&SRB&M: lying West of the Prescott Jerome Road; * * *." Note: This tract contains approximately 4 acres and is the Ericson home tract.

Defendant also prayed for damages.

The primary dispute is over the land upon which a structure known as the "Del View Inn and Trading Post" was erected in 1946 by defendant—alongside U.S. Highway 89—north of Prescott in the rough but picturesque Granite Dells area. Both parties contended that this structure lay within the boundaries of their deeded lands. The whole difficulty arose by reason of the fact that defendant failed to have his holdings properly surveyed before erecting this expensive structure.

It will be noted this particular parcel of land lies adjacent to the section line dividing sections 12 and 13. The preliminary factual issue, therefore, was whether it fell in Section 12, and thus was on plaintiff's property, or in Section 13, on defendant's land. The evidence of the civil engineers called by the respective parties indubitably established the true section line

230

as lying some 400 feet south of the exterior boundaries of Del View Inn, thus placing the structure clearly within plaintiff's holdings in Section 12. This fact is conceded in defendant's brief.

Defendant, however, in his counterclaim—by trial amendment—impliedly alleged that he had acquired title to the Del View Inn property by adverse possession, even if it was not included within the lands deeded to him. The basic issue as to this phase of the appeal then became whether defendant could prove adverse possession under the ten-year statute of limitations (A.R.S. § 12–526) sufficient to divest plaintiff's title to this tract.

■ The plaintiff having made his prima facie case for ejectment by proving that the disputed strip of land set forth in his complaint was within the property deeded to him, the burden then fell upon the defendant to prove a superior title acquired by adverse possession. In order for him to prevail, he would need to show affirmatively that as to the very land in question (i. e., the small Del View Tract), he was, in the language of A.R.S., § 12–526, subd. A:

"* * * a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, * * *."

Adverse possession is defined in A.R.S. § 12–521, subd. A, par. 1, as:

"* * * an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

The burden of proof devolves upon the party claiming title by adverse possession, and there are no equities favoring the establishment of his claim. Lewis v. Farrah, 65 Ariz. 320, 180 P.2d 578.

At the outset certain things should be made clear. From the record it manifestly appears:

1. The Del View Inn tract actually lies within the boundaries of plaintiff's deeded land in Section 12. Defendant originally had used the so-called "Waara line"—which lies 400 feet north of the true section line— as a starting point in locating same.

2. There is no overlapping or conflict in the descriptions contained in the deeds by which the parties hereto deraigned title, i. e., the deed for the 143 acres executed by the Western Motels, Inc. to the plaintiff or his trustee, and the *deeds* from LeRoy Anderson to defendant for 84 acres. Furthermore, as several government corners were found in the area, the "call of their deeds" could be followed by a competent surveyor, even though the country was rough thus making a survey somewhat expensive.

3. The parties hereto at all times dealt at arms length and there never existed any

privity of contract between them or their immediate predecessors in interest; moreover no boundary lines were ever agreed upon. This is best evidenced by the fact that very shortly after plaintiff acquired his lands the defendant repeatedly sought—without success—to either reach such an agreement as to the boundary line between sections 12 and 13 or to purchase from plaintiff the Del View Inn tract.

4. Defendant by his counterclaim also sought to quiet title to the acreage acquired from LeRoy Anderson, viz.: his 4-acre home tract lying west of the highway in the NE¼ NW¼ Section 13, together with the W½ SW¼ Section 12, containing 80 acres. The plaintiff, while entering a general denial in his answer to the counterclaim, repeatedly throughout the trial disavowed any interest or claim to any of the defendant's deeded lands. After the trial had ended, defendant Ericson offered an amendment as to the descriptions of the land claimed by him, in order, as he stated, to conform to the proof.

Later there was filed an "amended" trial amendment which, in effect, dropped legal descriptions previously used by defendant and substituted in lieu thereof two new metes and bounds descriptions. These were later adopted by the court in its judgment. To conserve space—and as illustrative of both—we shall set forth the one which we can only assume was intended to cover defendant's home tract and the Del View property lying to the north, viz.:

"Beginning at a point which is an iron pipe in a lake, which point is South 79°41′ West 259.5 feet from the intersection of the center line of Road No. 2 (Calvary Road), as shown in plaintiffs' Exhibit No. 28 in this cause, with the West right of way line of U.S. Highway 89; thence South 0°17′ West to the intersection with Ericson-Green boundary line; thence South 51°45′ East to the West right of way line of U.S. Highway 89; thence Northerly along the West right of way line of U.S. Highway 89 to the South line of Calvary Road; thence Westerly along the South line of Calvary Road to the North end of rock wall adjacent to Granite Dells Trading Post; thence Southwesterly to a 6 inch in diameter Pinon Pine with barbed wire imbedded in its trunk; thence Southwesterly to the point of beginning; * * *."

This appeal is from the judgment entered in defendant's favor on his counterclaim. There are but two assignments of error. The first challenges the sufficiency of the evidence to sustain the findings of fact as to adverse possession; the other attacks the legality of the order—made over plaintiff's objection—permitting defendant's trial amendment which set up entirely

new descriptions of the lands to which title was being quieted.

█ As to the latter, it manifestly appears that no witness testified as to the accuracy of either of the descriptions used, that is, what lands—as related to recognized government surveys—were embraced. No attempt was made to plat the tracts and file same as an exhibit in the case. Plaintiff's efforts to determine from what source the descriptions were obtained proved unavailing. Insofar as this record is concerned they both appear to have been "plucked out of thin air". When pressed at oral argument defense counsel relied heavily upon the fact that the trial court, having made a visual inspection of the premises, was presumably able to correctly describe the property and its boundary lines. We are not impressed with such a contention, where, as here, the court is dealing with so technical and intricate a subject as an involved metes and bounds description involving angles and degree variations. We are confident the trial court would disclaim any such sagacious powers.

Furthermore, attention is called to the fact that nowhere in the descriptions contained in the judgment are we given any tie-in to government corners or known section lines, nor is any reference made therein to any section, township or range. The description begins and ends in limbo. The courses are vague (e. g. "Northerly", "Southerly", etc.); no definite distances are given; no acreage is mentioned in tract just described; and the monuments cited ("an iron pipe in a lake", "a cedar post with an X cut on its top", "a 6 inch in diameter Pinon Pine with barbed wire imbedded in its trunk", "a cross on a high rock, etc.") are such as to require the services of a detective or an Indian scout rather than a surveyor to locate them. It appears that the trial court, in addition to its inspection, arrived at these descriptions by means of two other sources, both unreliable: (1) a sketch (exhibit F) drawn by the witness Cheek, an engineer, which did not purport to be anything resembling a survey (even the witness who prepared it would not vouch for its accuracy) and which was admitted for the limited purpose of indicating the relative positions on the ground of the various landmarks as they had been pointed out to him by Ericson; and (2), an old road plat found in the Assessor's office, apparently prepared by a surveyor (A. S. Fuller), the creator of which never appeared to testify or to be cross-examined as to its accuracy, which rests upon an erroneous designation, viz.: the "Waara line", as the section line between Sections 12 and 13. Even counsel for defendant Ericson, who finally prevailed on the counterclaim, strenuously objected to the admission of this exhibit on grounds that it was entirely incompetent as evidence without a proper examination of its source.

It is our considered opinion that the trial court committed reversible error in permitting the trial amendment setting up these unintelligible new descriptions (now incorporated in the judgment) for the reason there is no competent proof in the record to which they conform.

■ We next consider the sufficiency of the evidence to sustain the challenged findings of fact. The first difficulty encountered is in ascertaining what lands these findings refer to. As heretofore pointed out, plaintiff claimed no right, title, or interest in and to the 84 acres of land, described by legal subdivisions, which defendant had acquired from LeRoy Anderson. These were the only lands described in the counterclaim and as to such holding the defendant unquestionably had recorded deeds and had paid the taxes thereon, hence a judgment quieting his title thereto would have been entirely proper, although perhaps superfluous. However, the judgment as entered does not purport to do this; instead, vague, indefinite and unintelligible descriptions are used which leave us completely in the dark as to just what portion of the deeded lands of plaintiff are included therein.

We take it that the issue as to defendant's adverse possession of lands to which plaintiff had the record title is actually confined or limited to some part of that portion of the E½ of the SW¼ of Section 12, which lies to the west of the boundary line of the established Prescott-Jerome Highway (U.S. 89). Certainly as to these lands there is no evidence to support the court's express finding that defendant had been "cultivating, using and enjoying the same and paying taxes thereon and claiming under title or color of title and deed or deeds duly recorded for more than ten (10) years prior to the filing of the complaint herein." The evidence is indisputable that the plaintiff, and not the defendant, paid the taxes thereon. All assessments were based on descriptions contained in deeds. It is equally clear that defendant had no color of title to the property in question, as color of title cannot be based on a mistake as to the property actually described in a deed.

"No one can claim color of title by deed, when entering upon land, beyond what his deed purports to convey." United States v. Cameron, 3 Ariz. 100, 107, 21 P. 177, 179, reversed on other grounds, 148 U.S. 301, 13 S.Ct. 595, 37 L.Ed. 459.

■ The instant case was tried to the court without a jury. Four days were consumed in hearing the evidence. The trial was characterized by seemingly endless digressions into matters entirely extraneous to the real issues in the case. In spite of the voluminous record thus amassed (three volumes of transcript, totaling 690 pages), there is very little evidence *directly in point* on the vital question of whether in

fact defendant had acquired title by adverse possession to any of plaintiff's deeded lands. Prior to trial and in accordance with Rule 52(a), Rules of Civil Procedure, 16 A.R.S., counsel for plaintiff requested that the court make special findings of fact and conclusions of law. When such request is seasonably made, it is mandatory that the trial court find not part but *all* of the essential facts. Keystone Copper Mining Co. v. Miller, 63 Ariz. 544, 553, 164 P.2d 603. This was not done in the instant case. Many crucial questions of fact were left wholly unanswered. For this reason we feel that if an intelligent disposition is to be made and justice done the judgment must be reversed and the case sent back to the trial court for more specific findings, these to be based upon evidence already adduced—or the taking of such additional testimony as may be deemed advisable by the trial court—on these vital points, viz.:

1. What acts of the defendant are claimed to constitute "an actual and visible appropriation" of plaintiff's lands (i. e., within the limited area described, supra) for the ten-year period?

2. During which continuous ten-year period are such acts supposed to have occurred? What is the starting point of the claimed adverse possession?

3. Within the particular area in question, what were the specific outside limits of plaintiff's titled lands adversely possessed by defendant?

4. Did the 1948 lease from plaintiff's predecessor in interest to defendant Ericson covering the lands now in question, which ran for the period June 5, 1948 to June 5, 1949, occur during the ten-year period of defendant's claimed adverse possession, or was it subsequent thereto?

Judgment reversed with directions as above outlined.

STRUCKMEYER, C. J., and PHELPS, JOHNSON and BERNSTEIN, JJ., concur.