## WILLIAMS ET AL. *v.* UNITED STATES.

The Board of Land Commissioners, under the act of March 3, 1851 (9 Stat. 631), passed in 1855 a decree confirming a grant for all the land asked for in the petition, which was acquiesced in until 1872, when a petition praying that the estimate of quantity in the original petition be stricken out, and that the land as now claimed be confirmed, was presented to the District Court, — *Held,* that the claimants are without remedy under any act of Congress.

APPEAL from the District Court of the United States for the District of California.

*Mr. E. L. Goold* for the appellants.

*Mr. Solicitor-General Phillips, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Concessions or grants of land by Mexican governors were of three kinds, described as follows: (1.) Grants or concessions of land by specific boundaries, where the donee is entitled to the entire tract within the given boundaries. (2.) Grants or concessions by quantity, as of one or more leagues of land situate at some designated place, or within a larger tract described by what are known as out-boundaries, where the donee is entitled to the quantity specified and no more; it being settled law that boundaries given in such a case apply to the place where the land granted is situated, and not to the grant or concession to the donee. (3.) Grants or concessions of a certain place or rancho by some particular name, either with or without specific boundaries being given, where the donee is entitled to the tract within the boundaries, if given in the grant or concession; and if not, then he is entitled to the tract to be located and bounded as shown by the proofs of settlement and possession. *Higueras* v. *United States,* 5 Wall. 834.

Claimants to land in California by virtue of any right or title derived from the former governments might present their claims to the land commissioners; and it was made the duty of the commissioners, when the case was ready for hearing, to proceed to examine the same, and to decide upon its merits. 9 Stat. 632.

Pursuant to that act, the claimants in this case, on the 17th of February, 1852, presented their petition to the commissioners appointed under that act, asking, in effect, for confirmation

of the grant of land made to the original donee under whom they claim, describing the same as " the tract of land known as the Arroyo de la Laguna, situated on the coast of the designated county," and alleging that " the quantity of the land in said grant is one league." Three years later, the claimants, by leave of the commissioners, filed an amended petition in the case, in which they describe the claim as a certain piece of land known as the Rancho Arroyo de la Laguna, containing one square league, and situate in the county of Santa Cruz, in said State, and being bounded as follows : On the south by the Pacific Ocean, east by a stake about twenty yards from the mouth of a stream known as the Arroyo de la Laguna, northerly along the said stream to the mountains, westerly by the Arroyo de San Vicente, and containing in the said boundaries one league of land, as aforesaid.

Evidence, both oral and documentary, was subsequently introduced by the claimants in support of the claim of the petitioners, among which documents was the *espediente*, which embraced the petition of the original donee, the *diseño*, the order of reference, the *informé*, the *vista la petition*, the concession, the approval of the departmental assembly, and the decree of the governor confirming the proceedings. These several documents are given in the original language, with what purports to be a correct translation.

Concede that these several documents are genuine, and it follows beyond doubt that the claim is valid, and one of merit. All these evidences of title were submitted to the commissioners; and they, on the 10th of July, 1855, confirmed the grant, describing the same as " the land known by the name of Arroyo de la Laguna, situated in the county of Santa Cruz, of the extent of one league, provided the boundaries named contain that quantity; but if not, then the confirmation is for so much as may be embraced within the boundaries described as follows : On the east by the Arroyo de la Laguna, on the south by the sea, on the west by the Arroyo de San Vicente, and on the north by the sierra, reference being had to the concession and the *diseño* contained in the *espediente*."

On the 11th of February, 1856, notice of appeal was given by the Attorney-General; but on the 6th of October, in the

same year, the Attorney-General gave notice that the appeal would not be prosecuted by the United States; and, on the 24th of December in the same year, a stipulation, signed by the district-attorney, was filed in the case, dismissing the appeal, and withdrawing the notice previously filed by the Attorney-General, and granting leave to the claimants to proceed under the decree in their favor as under a final decree. Pursuant to that stipulation, the District Court, on the same day, entered a decree that the appeal in the case be dismissed, and that the claimants have leave to proceed under the decree in their favor as under a final decree. Whether they ever did proceed under that decree to secure a patent does not appear, unless the affirmative may be inferred from the long acquiescence of the claimants in that decree, and the order of the District Court made at the same time. Evidently the appeal on the part of the United States was abandoned, and none was ever taken by the claimants.

Fifteen years later — to wit, on the 27th of May, 1872 — the claimants filed a petition in the District Court, representing that the land granted to the original donee was granted by its name as a place, and that, in consequence of an error in translating one of the title papers in the case, the land described in the petition to the commissioners was estimated as one league in extent; and they pray that the estimate of quantity in that petition may be stricken out, and that the land as now claimed may be confirmed to the petitioners, — to wit, the land known as the Arroyo de la Laguna, — according to the boundaries given in the decree of the commissioners.

Affidavits were filed in support of the representations contained in the petition; and the petitioners also submitted a motion that the claim as made in the new petition be confirmed according to the original papers, and upon that motion the parties were heard; and the record shows that the District Court denied the motion, and that the claimants appealed to this court.

Beyond all doubt, the tract or parcel of land solicited by the donee in his petition to the governor was described in the petition as *el terreno conocido, de la costa de Santa Cruz, con el nombre del Arroyo de la Laguna segun el diseño que adjunto ;* which,

when properly translated, means "the land, on the coast of Santa Cruz, known by the name of the Arroyo de la Laguna, according to the map, or *diseño* annexed" to the petition. Due reference of the petition was made to the proper authorities to report whether the land solicited was grantable to the applicant; and, an affirmative report having been made, the governor entered a decree ordaining that the petitioner is the *dueño en propriedad del terreno conocido con el nombre del Arroyo de la Laguna, tomando por linderos desde el Arroyo de San Vicente hasta el de la Laguna, como se manifiesta en el diseño que corre agregado al espediente;* which, properly translated, means that the petitioner is declared to be the owner in fee of the land known by the name of the Arroyo de la Laguna, taking for its boundaries, from the Arroyo de San Vicente, as far as that of the Laguna, as is shown in the *diseño* attached to the record of the proceedings.

None of the documents constituting the *espediente,* except one embraced in what is called the *informé,* describe the land solicited by the word *sitio,* and that only in an incidental way. All the other documents constituting the original title papers describe the tract solicited as *el terreno,* the land known, &c. Nor would it change the original right of the claimants even if the word *sitio* had been used in all the documents, as the true meaning of the word *sitio,* as used in that connection, is "place," and not league, as translated in the original petition of the claimants.

Suppose that is so: still the error of translation was made by the claimants, and the decree of confirmation gave them all the land they claimed in their petition. Plainly the petitioners could have nothing more, as the commissioners were not authorized to adjudicate such claims, unless they were presented for confirmation. Complaint cannot be made that the District Court committed any error, as the transcript from the commissioners was never presented to the District Court.

Three commissioners were appointed to adjudicate such claims; and the act authorizing their appointment provided that the commission should continue for three years from the date of the act, unless sooner discontinued by the President.    9 Stat. 631.

By a subsequent act, it was made the duty of the commissioners to have two certified transcripts prepared of their proceedings and decision, and of the papers and evidence on which the same are founded, — one to be filed with the clerk of the proper District Court, and the other to be transmitted to the Attorney-General; and the provision was that the filing the transcript with the clerk of the District Court should *ipso facto* operate as an appeal for the party *against whom* the decision was rendered, and either party might prosecute the appeal by filing within six months a notice with the clerk of the District Court that such was the intention of the party filing such notice.   10 Stat. 99.

Prior to the expiration of the original act, the same was extended for one year longer from the date of its passage; and by a subsequent act the original act was continued another year from the 3d of March, 1855, and no longer.   10 id. 265, 603.

Examined in the light of these acts of Congress, it is clear that the power of the board of commissioners appointed under the act to ascertain and settle such claims had expired and ceased to exist more than fifteen years before the petition under consideration was filed in the District Court.   In the mean time, the petitioners never gave any notice of appeal from the decree of the commissioners to the District Court, and none was ever taken or perfected in their behalf.   Instead of that, the notice given by the Attorney-General of his intention to prosecute an appeal in the case had been withdrawn, and the appeal abandoned; and it appears that all the parties, from the date of the decree to the 27th of May, 1872, acquiesced in the decision of the commissioners; and in that view the court here is of the opinion that it is too late to make the proposed correction in the petition to the commissioners, or to enlarge the boundaries of the land confirmed by the decree.

Several reasons may be given for that conclusion: (1.) That the jurisdiction of the board of commissioners to adjudicate such claims ceased more than fifteen years before the petition in question was filed in the District Court.   (2.) That the decree of the commissioners was never legally transferred to the District Court, so as to give that court any jurisdiction in the case.

(3.) That the claimants, having acquiesced for fifteen years in the decree of confirmation, are without legal remedy. (4.) That they are not entitled to the redress claimed under any act of Congress now in force.

Tested by these considerations, it is clear that there is no error.                                                                *Decree affirmed.*