949 P.2d 67

### In re the Marriage of Debra L. RODEN, Petitioner–Appellant,

v.

### Mark W. RODEN, Respondent–Appellee.

No. 1 CA–CV 96–0479.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 28, 1997.

Burch and Cracchiolo, P.A. by Jack Daniel Klausner and J. Brent Welker, Phoenix, for Petitioner–Appellant.

Sheldon Mitchell, Phoenix, for Respondent–Appellee.

## OPINION

KLEINSCHMIDT, Presiding Judge.

When Mark and Debra Roden met in 1987, he was a grocery store manager and she was a school teacher. Within a year after they met, Mark entered into a franchise agreement to operate a Subway sandwich shop in Tempe. Debra helped inventory the restaurant while the sale was pending, and after the sale closed, she worked in the store during the evenings. Mark formed a corporation, Desert Subway, Inc., for the purpose of operating his franchise business, which he planned to expand.

In June of 1988, the couple began living together. By that time, Mark had opened another Subway restaurant and Debra, at his request, had left her teaching job and was working full time for the restaurant business. By 1990, Mark had acquired fifteen Subway franchises. He and Debra were married that year, and Debra continued to work long hours for the restaurant business, managing the day-to-day operation of the stores and training store managers.

In 1992, the corporation obtained a loan from Zions National Bank. The terms of the loan agreement limited the Rodens' compensation to $120,000. Upon the advice of their accountant, Mark and Debra combined their salaries into a single paycheck to Mark. Both Mark and Debra guaranteed the loan.

After they were married, the couple acquired an interest in a company, Fowl Investments, which operated three Cold Stone Creameries. Although the stock of Fowl Investments was held in Mark's name, it is undisputed that it was community property.

In 1993, Debra filed a petition for dissolution of the marriage, and a dispute arose as to the ownership of Desert Subway, Inc. Mark claimed that it was his sole and separate property, and Debra claimed that she was entitled to a one-half interest. She claimed that before they were married, she and Mark had agreed to pool all their income and share their assets.

## THE TRIAL COURT HAD JURISDICTION TO CONSIDER THE ORAL CONTRACT CLAIM AND SHOULD HAVE DECIDED THAT ISSUE

■ At trial, the court accepted Mark's argument that a domestic relations court is restricted by statute as to what it can hear and rule on and that it is not empowered to decide a contract action that would require the adjudication of separate property interests. This was error.

Mark Roden cites several cases for the proposition that dissolution proceedings are circumscribed by statute so that a court considering such an action has no authority to compel either party to divest himself or herself of title to separate property. *See Proffit v. Proffit*, 105 Ariz. 222, 462 P.2d 391 (1969), and *Andrews v. Andrews*, 126 Ariz. 55, 612 P.2d 511 (App.1980). One problem with his argument is that it assumes the property in question is Mark's separate property. That, however, is the issue for decision, and the most efficient way to make an equitable distribution is for the domestic relations court to resolve that point. *See Myrland v. Myrland*, 19 Ariz.App. 498, 508 P.2d 757 (App. 1973).

Another problem with Mark's argument is that it runs counter to the sense of the supreme court's decision in *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 907 P.2d 67 (1995). That case held that a probate judge had the power to consolidate a related civil action with the probate proceeding. The civil action was one for negligence, conversion and related causes of action against the former administrator of the estate and his attorneys. The supreme court rejected the argument that because the probate court was a special division of the superior court, its jurisdiction was limited to probating estates.

Mark Roden argues that *Marvin Johnson, P.C.* does not apply because a statute, Ariz. Rev.Stat. Ann. ("A.R.S.") section 14–1302(A), allowed the probate court to hear and deter-

mine claims by and against fiduciaries. He points out that there is no analog to section 14–1302(A) in the domestic relations statutes. Moreover, he says the supreme court in *Marvin Johnson, P.C.* merely held that the probate court had the discretion to consolidate a related case.

The existence of section 14–1302(A) was not key to the decision in *Marvin Johnson, P.C.* Mark's argument about discretion ignores the fact that the trial court here believed that it had no jurisdiction to hear the case, and accordingly, did not engage in an exercise of discretion when it dismissed the issue. Even if the trial court had exercised its discretion and decided not to hear Debra's claim, that would have been an abuse of discretion because the question of whether the property is Mark's sole and separate property is so intertwined with the equitable division of the couple's property.

Mark argues that even if the domestic relations court was wrong in believing that it had no jurisdiction to decide the nature of the property, no harm was done because Debra is not entitled to any interest in it. He relies on A.R.S. sections 25–201 through 25–205, which provide that premarital agreements must be in writing and signed by both parties. Mark's argument fails because the statute is intended to govern the rights of parties upon marriage. Here, Debra has never alleged that the agreement was entered into with marriage in mind. On the contrary, she asserts, and we must presume that it is true, that the agreement was to govern how the property was to be held whether the parties were married or not.

Our conclusion that the trial court erred in finding that it had no jurisdiction to adjudicate the question whether the parties orally agreed to pool income and share assets does not end our inquiry. If Debra does not prevail on this question on remand, the other issues she has raised will ultimately need to be answered. We address each in turn.

## THE TRIAL COURT DID NOT ERR IN ITS CHARACTERIZATION AND DISTRIBUTION OF DESERT SUBWAY, INC.

■ Debra Roden claims that even if Desert Subway, Inc. was originally Mark's separate property, it became community property because community funds were commingled with its assets. If community property and separate property are commingled, all the property is presumed to be community property unless one or the other, separate property or community property, can be identified and traced. *Cooper v. Cooper*, 130 Ariz. 257, 259, 635 P.2d 850, 852 (1981). Debra makes specific claims of commingling. She says that money from the couple's joint bank account was loaned to the corporation. The record shows this, but it also shows that the loans were repaid to the community.

Debra argues that Desert Subway, Inc. used commingled funds to purchase an interest in a Subway franchise in Flagstaff. The argument is neither well explained nor tied to the record. As best we can tell, it is based on the premise that Desert Subway, Inc. was community property. Since this has not been established, the argument fails.

Debra's final argument in this respect is based on evidence that showed that Mark's brother-in-law owned an interest in Desert Subway, Inc. Debra argues that the brother-in-law was paid consulting fees over a three-year period from community funds. The record shows, however, that the payments were made solely out of the cash flow generated by Desert Subway, Inc. which were, as far as has yet been established, Mark's sole and separate funds.

## IT WAS NOT AN ABUSE OF DISCRETION TO DENY DEBRA A *COCKRILL* INTEREST IN DESERT SUBWAY, INC.

■ As another alternative, Debra argues that she is entitled to a community interest in the increase in value of Desert Subway, Inc. from November 1990 to the date of dissolution. According to *Cockrill v. Cockrill*, 124 Ariz. 50, 54, 601 P.2d 1334, 1338 (1979), any increase in the value of separate property during marriage as the result of the work effort of the community should be apportioned between the separate property of the owner and the community property of

the spouses. However, if the community is paid a fair return for its labor, the increase or profits from the separate property remain separate. Only if such return has not been paid, or was not reasonable, would the community have a claim to the growth in value of Mark's separate property. *Nace v. Nace,* 104 Ariz. 20, 448 P.2d 76 (1968).

Here, the trial court found that the increase in value of Desert Subway, Inc., which resulted from community efforts, was offset by the amount of compensation—community property—that each party received during marriage. The court concluded, based on its findings, that between 1990 and 1993, the community received as compensation $516,-000.00, and that Debra received approximately $100,000.00 in temporary support during separation. There is sufficient evidence to support this finding in the record, so the trial court did not abuse its discretion in deciding this issue as it did.

## THE TRIAL COURT DID NOT ERR IN ITS EVALUATION OF FOWL INVESTMENTS

 Debra Roden claims that the trial court undervalued the couple's jointly owned business, Fowl Investments d/b/a Coldstone Creameries. The court accepted the testimony of Scott Stuart, Mark's expert witness, and ascribed a value of $71,000 to the corporation. Debra says that Stuart excluded the corporation's income after April 1994 from his calculation, and this unfairly depressed the value because the income was rising after that date. She also argues that Stuart achieved the same effect by including losses to the corporation from operations that had been discontinued.

Stuart testified about how he valued the corporation:

I did not use any of the methods that were described [by Debra's expert witness]. If you'll look at Schedule 53, the income for Fowl for the last two years has been $2,500 for 1993 and $7,600 for the first part of 1994. My understanding is that the income increased in July, which, of course, is the biggest month in the ice cream business. But there are several problems with the income here.

First of all, there is—many of the expenses are not included on the financial statement because they are paid through Desert Subway. Desert Subway pays all the accounting fees, it pays all the administrative fees. It pays legal fees, and most importantly, it does not include any compensation to an owner. And even if Mr. Roden were to sell this, the new buyer would expect compensation to himself. Consequently, there is no income. It's basically a start-up business has been operating Cold Stone Creameries for two years approximately. And in my view, it's worth no more than its book value which is set forth on Schedule 55.

The trial court accepted this testimony as correct. While the evidence is conflicting, nothing in the record compels the conclusion that the trial court abused its discretion in accepting and rejecting evidence.

## THE REFUSAL TO AWARD DEBRA SPOUSAL MAINTENANCE WAS NOT AN ABUSE OF DISCRETION

 Arizona Revised Statutes sections 25–319(A)(1) and (2), as they apply to this case, provide that the trial court may award spousal maintenance if the spouse seeking maintenance lacks earning capacity or sufficient property to provide for his or her reasonable needs. Debra argues that because the trial court found that all of the stock in Desert Subway, Inc. was Mark's sole and separate property, it should have awarded her spousal maintenance.

The trial court made extensive findings on the issue of maintenance. It found that the couple had lived together for slightly more than two years and that during that period, Debra had received a salary from the corporation of about $130,000. She had received over $100,000 in temporary support during the separation as well as thousands of dollars for goods and services and cash advances during that period which were charged to credit cards. It found that Debra's claimed living expenses were exaggerated and unsubstantiated to the extent of $3,500 a month. It also found that although there was no reason Debra could not find work commensu-

rate with her education and experience, she had not sought such work for over two years. Under the court's award, Debra received over $17,500 in cash and almost $60,000 in a promissory note which was payable at the rate of $2,000 a month. The record also shows that Mark and Debra had enjoyed a middle class life style and that Debra was capable of maintaining that condition after the marriage. We cannot say that the trial court abused its discretion in refusing to award spousal maintenance.

## THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEBRA'S REQUEST FOR ATTORNEYS' FEES

■ The statute in effect at the time of the dissolution was A.R.S. section 25–324, which provided:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter. . . .

Whether to award attorneys' fees and the amount thereof is left to the "sound discretion" of the trial court. *Burkhardt v. Burkhardt*, 109 Ariz. 419, 421, 510 P.2d 735, 737 (1973). The court is to consider "the financial resources of both parties," *Burnette v. Bender*, 184 Ariz. 301, 305, 908 P.2d 1086, 1090 (App.1995), and in doing so must consider both the claimant's need and the other spouse's capacity to bear the burden. *Nesbitt v. Nesbitt*, 1 Ariz.App. 293, 297, 402 P.2d 228, 232 (1965).

■ It is an abuse of discretion to deny attorneys' fees to the spouse who has sub-

stantially fewer resources, unless those resources are clearly ample to pay the fees. *See Rowe v. Rowe*, 154 Ariz. 616, 622, 744 P.2d 717, 723 (App.1987). We found such an abuse of discretion in *Burnette*. There, the husband's income was three times that of the wife's and the husband had "far more financial resources." *Burnette*, 184 Ariz. at 306, 908 P.2d at 1091.

In this case, the parties split the community property, each receiving about $100,000. Mark has about $2 million in separate property and in recent years his annual salary has ranged from $90,000 to $150,000. Debra earns only $5.50 an hour. Even allowing for what she could earn by returning to her former profession, the disparity in resources is great.

If Debra does not prevail on remand and the division of property remains as it now is, an award of attorneys' fees incurred in the trial court and for this appeal, in an amount we leave to the trial judge's discretion, should be made to Debra. If Debra prevails and her wealth increases substantially, no fee award may be necessary. That, too, we leave to the trial court's discretion.

The judgment is affirmed in part, and reversed in part, and the case is remanded to the trial court for further proceedings.

LANKFORD and FIDEL, JJ., concur.