35 P.3d 89

**In re the MARRIAGE OF David M. ROBINSON, Petitioner/Appellee/Cross–Appellant,**

**and**

**Angella S. THIEL (fka Robinson), Respondent/Appellant/Cross–Appellee.**

**No. 2 CA–CV 99–0203.**

Court of Appeals of Arizona, Division Two, Department B.

Nov. 20, 2001.

---

Natalie Wright, Tucson, for Petitioner/Appellee/Cross–Appellant.

Liberty, O'Neill and Bibbens, By Pamela A. Liberty, Tucson, for Respondent/Appellant/Cross–Appellee.

## OPINION

DRUKE, J.

¶1 This appeal presents two issues not previously addressed in Arizona: whether a trial court should include vested employee stock options in calculating child support and, if so, when and how the court should value them. We hold that vested employee stock options constitute income for purposes of calculating child support under the 1996 Arizona Child Support Guidelines. A.R.S. § 25–320 app. We decline, however, to adopt a universal method of valuing such options and leave that to the trial court's discretion, based on the facts and circumstances of each case.

¶2 The parties stipulated to some of the facts relevant to this appeal. Those facts and the record show that, in July 1998, the trial court dissolved the marriage of Angella and David Robinson. The court incorporated into the decree a joint parenting agreement, a property settlement agreement, and an amendment to the property settlement agreement. In accordance with the joint parenting agreement, the trial court awarded the parties joint legal custody of their minor daughter, Ali, and appointed Angella the primary physical custodian. The record additionally shows that the court ordered David, who is employed by America On Line (AOL), to pay $750 per month in child support. Because Angella planned to remarry and move to Italy, the court further ordered David to pay one-half of Angella's and Ali's

visitation travel expenses. The parties agreed the court would hold a review hearing after one year to "address child support and related issues, such as the division of travel expenses."

¶ 3 After that hearing, the trial court reduced David's monthly child support obligation to $707, based on such factors as his annual salary, an imputed seven percent annual return on his investments, and a visitation adjustment. As to the vested stock options that AOL had periodically granted to David, the court ruled they were recurring "non-cash benefits" under the Guidelines but found "it would be speculative to place a value on those options until, and if, they are exercised." The court thus determined that "the most fair and reasonable method to calculate [David's] additional child support obligation [is] when he exercises his stock options." Accordingly, the court ordered that David

> pay a percentage of any monies he receives upon the exercise of the stock options the year the options are exercised[;] ... that 8% of the monies received, before taxes, is a fair and reasonable amount for [David] to pay for additional child support for Ali[; and] ... that the exclusive use of the ... Guidelines in this case would be inappropriate and unjust and this partial alternative to the Guidelines is in the best interests of the child. § 17, Arizona Child Support Guidelines.

The court also ordered the parties to continue sharing visitation travel expenses and to pay their own attorney's fees and costs. After the trial court denied Angella's motion for reconsideration, she appealed, and David cross-appealed.

¶ 4 Angella claims the trial court erred in its treatment of David's stock options for purposes of calculating his child support obligation. She also claims the court abused its discretion by requiring that she continue to pay one-half the visitation expenses and by denying her request for attorney's fees. In his cross-appeal, David challenges only the court's apparent inclusion in its order of the value of the unexercised stock options AOL had granted before the decree was entered,

not the method the court used to value the options.

## Stock Options

¶ 5 Angella contends the trial court "erred as a matter of law by excluding from David's income the exercise of stock options in the calculation of his gross income for purposes of determining a monthly child support award." We will not disturb a trial court's decision on the amount of child support and whether to modify an award of child support absent an abuse of discretion. *Little v. Little*, 193 Ariz. 518, 975 P.2d 108 (1999). But, as our supreme court noted in *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982), a trial court may be regarded as having abused its discretion when "there has been an error of law committed in the process of reaching the discretionary conclusion." We thus review de novo whether the trial court here correctly ruled that the Guidelines' definition of "gross income" includes David's vested stock options for purposes of calculating his child support obligation. *Cf. Mead v. Holzmann*, 198 Ariz. 219, 8 P.3d 407 (App.2000) (interpretation of Guidelines and whether pretax dollars are included in gross income reviewed de novo); *Burnette v. Bender*, 184 Ariz. 301, 908 P.2d 1086 (App.1995) (issue of whether capital gains is included in gross income when calculating child support is question of law).

¶ 6 Section 4(a) of the Guidelines provides, in relevant part, that "gross income" for purposes of calculating a parent's child support obligation "includes income from any source" and that "[c]ash value shall be assigned to in-kind or other non-cash benefits." § 25–320 app. To determine whether employee stock options constitute income under the Guidelines and the proper method for valuing them, we must first examine the nature of such stock options.

¶ 7 An employee stock option "allows a corporate employee to buy shares of corporate stock at a fixed price or within a fixed period [and is usually] granted as a form of compensation." *Black's Law Dictionary* 1431 (7th ed.1999). "It is a contract for a right to buy (call) or sell (put) and, like most

contracts, the value of the option depends directly on the terms of the option." Michael J. Mard & Jorge M. Cestero, *Stock Options in Divorce: Assets or Income?*, 74 Fla. B.J. 62, 62 (May 2000). Also, a stock option may be vested and matured, vested and unmatured, or unvested. As commentators have explained:

> Essentially, "[the] employee stock option is vested and matured if the employee has an absolute right to exercise the option immediately; the option is vested and unmatured if the employee cannot exercise the option yet but has an absolute right to do so at some future date; the option is unvested if it cannot yet be exercised" and if future vesting is based upon the occurrence of a certain contingency.

Kristy Watson, *Acting in the Best Interests of the Child: A Solution to the Problem of Characterizing Stock Options as Income*, 69 Fordham L.Rev. 1523, 1538 (2001), *quoting* Note, *Stock Options—Classification and Valuation*, 15 Equitable Distribution J. 77, 77 (1998).

¶ 8 The stock options AOL has granted to David are subject to the following terms. David may not exercise an option and acquire stock for a period of one year after the grant date. Thus, when granted, the option is vested but unmatured. At the end of the first year, twenty-five percent of the grant matures, thus permitting David to exercise the option and acquire a maximum of twenty-five percent of the stock granted. He may thereafter acquire an additional twenty-five percent of the stock on each of the next three annual maturity dates but forfeits any stock he does not acquire within ten years of the grant date. To acquire the stock, David

must pay the "strike price," which is the price set at the grant date.[1]

¶ 9 David argues that his stock options do not constitute cash-like benefits under the Guidelines because they "have *no value* until they are exercised and [the stock is] sold." [2] This argument, however, ignores the dual nature of stock options.

> They have characteristics of an asset in that they represent a right to purchase an ownership share in the underlying corporation's stock.... On the other hand, they have characteristics of income in that the whole purpose behind options is to allow the owner to capture the appreciation in value of the stock prior to its actual purchase.

Mard & Cestero, *supra*, at 62. Employee stock options have thus become a widely used form of compensation and are "increasingly popular as part of the corporate executive's total compensation package versus providing only current cash salary or cash bonuses." Jack E. Karns & Jerry G. Hunt, *Should Unexercised Stock Options Be Considered "Gross Income" Under State Law for Purposes of Calculating Monthly Child Support Payments?*, 33 Creighton L.Rev. 235, 256 (2000); *see also* Watson, *supra* (stock options are a form of compensation commonly used by start-up companies, technology companies in particular). Indeed, stock options often represent a significant part of an employee's compensation. *See Murray v. Murray*, 128 Ohio App.3d 662, 716 N.E.2d 288, 294 (1999) (stock options granted to father annually were "an integral part of his compensation package").

---

1. Although not entirely clear from the record, David's stock options appear to be nontransferable, that is, they cannot be traded in the open market. *See generally* Kristy Watson, *Acting in the Best Interests of the Child: A Solution to the Problem of Characterizing Stock Options as Income*, 69 Fordham L.Rev. 1523 (2001). And his options are apparently nonqualified options, as opposed to qualified, incentive stock options. For a discussion of the difference between qualified and nonqualified stock options and the tax implications for each, *see* Jack E. Karns & Jerry G. Hunt, *Should Unexercised Stock Options Be Considered "Gross Income" Under State Law for Purposes of Calculating Monthly Child Support*

*Payments?*, 33 Creighton L.Rev. 235 (2000). *See also* Andrew C. Littman, *Valuation and Division of Employee Stock Options in Divorce*, 29 Colo. Law. 61 (May 2000).

2. David also argues that Angella waived the issue of whether his stock options should be included in gross income for purposes of calculating child support because she failed to raise the issue at the time the trial court entered the decree. We find his argument meritless. As already noted, David agreed at the time the decree was entered that the post-decree review hearing would "address child support and related issues."

¶ 10 That has been true for David. Although his base salary was $42,600, David's total income from AOL, including income from exercised options, was $159,721 in 1995, $88,297 in 1996, $267,438 in 1997, and $1,817,059 in 1998.[3] That the options comprise a significant part of David's compensation and represent value to him is irrefutable. As the court observed in *Rice v. City of Montgomery*, 104 Ohio App.3d 776, 663 N.E.2d 389, 392 (1995): "[T]he true value of the stock option to its owner is the potential for appreciation in stock price without investment risk." *See also In re Marriage of Kerr*, 77 Cal.App.4th 87, 91 Cal.Rptr.2d 374, 380 (Ct.App.1999) (father's stock options are "part of his overall employment compensation and must be used to calculate child support").[4] Accordingly, we conclude that the trial court properly ruled that David's vested stock options from AOL constitute recurring "non-cash benefits" under the Guidelines.

¶ 11 The question remains, however, whether the trial court correctly determined how and when to value those options for purposes of calculating child support. As noted above, the court determined that they should be valued at the time David "exercises his stock options." Angella asserts that the court's determination is contrary to their child's best interests because it gives David unfettered discretion to decide whether and when to exercise his options. It permits him to protect "the bulk of the wealth he accumulates from his employment during his daughter's minority ... by simply refusing to exercise any stock option ... until after she reaches the age of majority." David counters that "Arizona law mandates that child support should be based on actual circumstances, not hypothetical income."

¶ 12 The valuation method the trial court adopted is usually referred to as the "deferred distribution" method or the "if, as and when" method. *Green v. Green*, 64 Md. App. 122, 494 A.2d 721, 729 (1985). As An-

gella points out, however, this method leaves the choice of whether and when to exercise the option to the employee parent. Thus, the "if, as and when" method not only leaves room for great mischief, potentially depriving a child of needed support, but also creates far too much uncertainty in the amount of child support, subjecting it to the investment decisions or whims of the employee parent. Accordingly, we agree with the Ohio Court of Appeals that, after a vested stock option matures, "the option then becomes an investment choice, and its value may be imputed as part of [that parent's] 'gross income.'" *Murray*, 716 N.E.2d at 294. The *Murray* court reasoned that to hold otherwise would allow the parent "to shield a significant portion of [the parent's] income from the courts, and deprive [the] children of the standard of living they would otherwise enjoy." *Id.* To avoid this result, we believe vested, matured stock options must be valued independently of and without regard to the employee parent's decision to actually exercise them. *But see Fisher v. Fisher*, 564 Pa. 586, 769 A.2d 1165 (2001) (refusing to value unexercised options based on speculation that parent might attempt to avoid sharing profit with former spouse).

¶ 13 Various methods have been proposed by courts and commentators for valuing employee stock options, whether for purposes of dividing marital assets or calculating child support. For example, in *Murray*, the court valued each vested stock option "according to the stock price on the most recent date on which an option could be exercised[, i.e., the maturity date,] minus the [strike] price on the day that option was granted." 716 N.E.2d at 298. The court then added the imputed appreciation of those vested, matured options to the father's annual gross income and, based on the applicable child support guidelines, calculated the monthly child support obligation.

---

3. The parties agree, however, that the higher income for 1998 resulted from David's having exercised his options "to effect a division of the parties' community property for the purpose of divorce."

4. *But see In re Marriage of Campbell*, 905 P.2d 19 (Colo.Ct.App.1995) (employee parent must realize income for it to be included in calculation of child support, and options must be exercised to be regarded as income).

¶ 14 Another method for valuing stock options is often referred to as a net present value method. *See, e.g., Davidson v. Davidson,* 254 Neb. 656, 578 N.W.2d 848 (1998); *Hall v. Hall,* 88 N.C.App. 297, 363 S.E.2d 189 (1987). This method utilizes various accepted economic and theoretical models, which generally take into account the vagaries and volatility of the stock market. *See* Mard & Cestero, *supra* (identifying economic models such as Shelton and Kassouf and theoretical models such as widely used Black–Scholes); *see also* Watson, *supra,* at 1539 (stating net present value method "depends on either the intrinsic valuation method or any financial model, including the Black–Scholes model"). But, like the court in *Murray,* we question the practicality of these models for determining a parent's child support obligation. As that court observed: "Although these models are regularly used in the marketplace, they are designed to reflect market forces under certain conditions, and may not be reliable for purposes of litigation." 716 N.E.2d at 298. Moreover, "these models generally were designed to value marketable options," which employee stock options typically are not. Andrew C. Littman, *Valuation and Division of Employee Stock Options in Divorce,* 29 Colo. Law. 61, 62 (May 2000).

¶ 15 Finally, rather than adopting one of the above valuation methods, one commentator urges courts to impose a constructive trust on stock options. The commentator agrees "courts have properly classified stock options as income in the child support context" but contends "they have used improper methods to value those options and have effectively defeated the goal of fulfilling the best interests of the child." Watson, *supra,* at 1558. She submits that courts "should impose a constructive trust on the options and divide the options between the parties based on the percentages in the child support formula," claiming that this "provides a better solution to valuation because it addresses the problems of fairness and efficiency better than currently employed methods." *Id.*

¶ 16 In light of the numerous methods available for valuing employee stock options, we hesitate to prescribe a single method for all cases or a particular method

for this case. Although the method the *Murray* court used appears appropriate here, we decline to adopt it based on the limited stipulated record before us but do not foreclose the trial court from adopting it upon remand if the facts and circumstances warrant it. The appropriateness of the valuation method will depend on such factors as the nature of the stock options, market conditions, tax consequences, ease of application, and other facts and circumstances peculiar to each case. Of course, the method adopted cannot leave the valuation to the unfettered discretion of the employee spouse, as was the case here, and must be consistent with the policies and purposes of the Guidelines. *See* § 25–320 app., § 1 (purpose of Guidelines is "[t]o establish a standard of support for children consistent with the reasonable needs of children and the ability of parents to pay"). *See also Holzmann,* 198 Ariz. 219, ¶ 11, 8 P.3d 407, ¶ 11, *quoting Boutz v. Donaldson,* 128 N.M. 232, ¶ 26, 991 P.2d 517, ¶ 26 (App.1999) (recognizing that " 'one of the driving forces behind the child support guidelines is efficiency and ease of administration' ").

¶ 17 Although we cannot approve the "if, as and when" valuation method the trial court adopted in this case, we disagree with Angella that § 4(a) of the Guidelines precluded the court from ordering David to pay, as child support, a percentage of the actual or imputed income he derives from his stock options. Section 4(a) provides that "[s]easonal or fluctuating income shall be annualized." § 25–320 app. This would usually include option-derived income and require its annualization. But § 17(a) of the Guidelines allows a trial court to deviate from the Guidelines, and the trial court did so here after it considered, as § 17(a) requires, "all relevant factors, including those set forth in Arizona Revised Statutes Section 25–320," and "the best interests of the child in determining the amount of a deviation," as § 17(a)(2) requires. § 25–320 app. The court thus found "it fair and reasonable that [David] pay [eight percent] of any monies he receives upon the exercise of [his] stock options." Given the provisions of § 17(a) and the broad discretion accorded trial courts in ordering child support, *see Standage v.*

*Standage*, 147 Ariz. 473, 711 P.2d 612 (App. 1985), we agree with the California Court of Appeals in *Marriage of Kerr* that a percentage award "would be *permissible,* as long as the [trial] court sets a maximum amount that would not exceed the children's needs," which the court would determine "in light of both parents' abilities and standards of living." 91 Cal.Rptr.2d at 381 (emphasis added). In sum, trial courts must determine, in the exercise of their discretion, what works best under the facts and circumstances of each case.

¶ 18 For the foregoing reasons, we conclude that the trial court properly included David's vested stock options in calculating child support but erred in adopting the "if, as and when" method of valuing them and in ordering David to pay eight percent of the resulting income as additional child support. We therefore remand the matter to the trial court for further proceedings on the valuation issue, as well as on the issue raised in David's cross-appeal. We cannot determine from this limited stipulated record whether all options granted pre-decree were considered and distributed in the property settlement agreement. We therefore cannot decide, as David argues, that the child support award should apply "only to those stock grants David receives [post-decree]."

### Visitation Expenses

¶ 19 Angella claims the trial court abused its discretion by ordering her to pay one-half the visitation travel expenses. We disagree. Section 15 of the Guidelines allows a trial court to allocate travel costs associated with visitation after considering "the means of the parents" and "how their conduct (such as a change of residence) has affected the costs of visitation." § 25–320 app. In this case, the trial court had before it financial information relating to both parties, and it was well aware that Angella had moved with Ali to Italy. Under these circumstances, we find no abuse of discretion. *See Spector v. Spector,* 17 Ariz.App. 221, 496 P.2d 864 (1972).

### Attorney's Fees

¶ 20 Angella also claims that, based on "the parties' respective financial circumstances," the trial court erred by failing to award her attorney's fees. We review the court's ruling for an abuse of discretion. *Burnette.* We find none here.

¶ 21 Under A.R.S. § 25–324, a trial court may "order a party to pay a reasonable amount to the other party" for attorney's fees and costs "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." In considering their financial resources, the court "must consider both the claimant's need and the other spouse's capacity to bear the burden." *Roden v. Roden,* 190 Ariz. 407, 412, 949 P.2d 67, 72 (App.1997). "It is an abuse of discretion to deny attorneys' fees to the spouse who has substantially fewer resources, unless those resources are clearly ample to pay the fees." *Id.*

¶ 22 The trial court here found that both parties had sufficient funds to pay their attorneys, had legitimate issues requiring resolution, and had stipulated to having the review hearing. Although the record shows that David has considerably more assets than Angella, she had no debt and nearly $215,000 in assets at the time of the review hearing. Because Angella had sufficient assets to pay her attorney's fees, *Roden,* the court did not abuse its discretion in ordering her to do so. In our discretion, we deny both parties' requests for an award of attorney's fees on appeal.

ESPINOSA, C.J. and HOWARD, P.J., concurring.