NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In Re the Matter of:

MARK H. LYNCH, *Petitioner/Appellee*,

*v.*

FRANCES KATHRYN BRAKEBILL, *Respondent/Appellant.*

No. 1 CA-CV 14-0165
FILED 2-17-2015

Appeal from the Superior Court in Maricopa County
No.  FC2007-005139
The Honorable Thomas L. LeClaire, Judge

**AFFIRMED IN PART; REMANDED IN PART**

COUNSEL

Scott L. Patterson PLLC, Tempe
By Scott L. Patterson
*Counsel for Petitioner/Appellee,*

Frances Kathryn Brakebill, Phoenix
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Maurice Portley joined.

---

**J O N E S**, Judge:

¶1        Frances Brakebill (Mother) appeals the trial court's order modifying child support and denying her motions for new trial and to amend the judgment.  For the following reasons, we affirm in part and remand in part for further findings.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Mother and Mark Lynch (Father) divorced in February 2008. As part of the divorce decree, they agreed to share legal and physical custody of their three minor children, whom they stipulated had no special needs or extraordinary expenses.  The child support worksheet, prepared by Mother's attorney and incorporated into the decree, attributed Mother income of $6,000 per month, and required Father to pay $1,216 per month in child support; however, Father agreed to an upward deviation of $2,284 for a total monthly child support amount of approximately $3,500.  In May 2010, the parties stipulated to reduce Father's child support obligation to $2,400 per month.

¶3        In September 2012, after the parties' oldest child turned eighteen years old, Father filed a petition to modify his child support obligation via the "simplified procedure" authorized by Arizona Rule of Family Law Procedure 91(B)(2)(b) and Arizona Revised Statutes (A.R.S.) section 25-320 app. § 24(B) (Guidelines).[2]  The accompanying child support

---

[1]        We view the facts in the light most favorable to sustaining the trial court's orders.  *In re Marriage of Yuro*, 192 Ariz. 568, 570, ¶ 3, 968 P.2d 1053, 1055 (App. 1998).

[2]        Absent material revisions from the relevant date, we cite a statute's current version.

worksheet reflected Father's child support obligation as $1,327.49 per month.[3]

**¶4** Mother requested a hearing on Father's petition. She then filed her own petition, alleging Father's income had increased, her own income had decreased, and the children had extra education expenses, medical expenses, and special needs, all of which supported an increase in Father's child support obligation to $2,598.80. She also alleged Father had recently relocated to Florida, which affected their custody and parenting time arrangement. She requested a modification of child support, custody and parenting time accordingly, as well as an award of attorneys' fees.

**¶5** Mother thereafter submitted a timely request for findings of fact and conclusions of law pursuant to Arizona Rule of Family Law Procedure 82(A). Prior to trial, the parties entered into an agreement affirming the majority of their prior order, which granted the parties joint legal decision-making, Mother primary physical custody, and Father parenting time of approximately sixty days per year, leaving only the issues of child support and attorneys' fees for determination by the trial court.

**¶6** At trial in May 2013, Father testified he received a substantial inheritance during the parties' marriage, of which $250,000 was given to Mother as part of the divorce settlement. He also originally agreed to an upward deviation, believing it to be in his children's best interest, but testified the monies with which he had intended to fund those additional sums had been exhausted, at least in part in litigating a joint debt, and he could no longer afford to pay the increased amount. Father testified he currently earns $90,400 per year, plus commissions, which was reflected in his 2010 and 2011 tax returns and 2012 W-2 form. He also submitted evidence regarding the cost of health insurance available through his employer.

**¶7** Mother testified she had earned a bachelor's degree, would receive her paralegal certificate within the next week, and was six to twelve hours short of obtaining a master's degree. Despite her high level of education, Mother claimed monthly income of only $684 and explained her 2012 tax return, reflecting a total income of $29,790, reflected mostly

---

[3] Father's updated calculation resulted in a 45% variation from the existing child support order. Pursuant to the Guidelines, the simplified procedure may be used where "application of the guidelines results in an order that varies 15% or more from the existing amount." Guidelines § 24(B).

dividends and capital gains. Mother submitted a child support worksheet with her response to Father's petition, and again at trial, estimating, as did Father, that the cost of health insurance was $270 per month.

¶8        Mother further testified that an upward deviation was appropriate to allow the children to maintain the lifestyle they were accustomed to during the parties' marriage, which included building a custom home and taking yearly Disney cruises. She testified to having approximately $1,000 per month in "extra education expenses" and "extraordinary child expenses" related to past medical care and having a thirteen-year-old "homebound student." She provided no documentation to support either the existence or amount of those expenses.

¶9        In its ruling, the trial court adopted Father's income from his 2012 W-2 form and Mother's from her 2012 federal income tax return. As set forth in an accompanying child support worksheet, Father was credited for fifty parenting days and $270 per month to provide health, dental and vision insurance for the children. Using these figures, the court calculated Father's child support obligation for two children at $1,291.28 per month.

¶10        The trial court went on to deny Mother's request for an upward deviation, noting Father provided "a number of gift items not covered by child support" to the children and "Mother has not fully disclosed her income to the Court." The court found Mother's evidence was "inadequate as it does not relate back to how the increased funds, if they were Ordered, would enhance the life of the minor child[ren] and, thus, be in the best interests of the minor children." The trial court then concluded Mother failed to establish that the presumptive child support amount was deficient.

¶11        Finally, the trial court denied Mother's request for attorneys' fees based upon an alleged disparity of income between the parties because it was unable to "reliably assess" Mother's income. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1). *See* *Reeck v. Mendoza*, 232 Ariz. 299, 302, ¶ 10, 304 P.3d 1122, 1125 (App. 2013) (holding "signed support order by the family court is a final decision by its nature," and entry thereof functions as a final, appealable judgment).

## DISCUSSION

### I.        Findings of Fact and Conclusions of Law

¶12        Mother argues throughout her briefs that the trial court failed to set forth specific findings to support its decision. Generally, "when a

4

timely request for findings is submitted, the trial court must make findings concerning *all* of the ultimate facts." *Elliott v. Elliott*, 165 Ariz. 128, 134, 796 P.2d 930, 936 (App. 1990) (citing *Fritts v. Ericson*, 87 Ariz. 227, 234, 349 P.2d 1107, 1111 (1960)). Even where a proper request is made, the sufficiency of the findings may still be waived where a party fails to object to their inadequacy at the trial court level. *Id.* (citing *Green v. Geer*, 720 P.2d 656, 660 (Kan. 1986)); *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300-01, 878 P.2d 657, 658-59 (1994). A lack of findings may likewise be waived "where the record is so clear that the [reviewing] court does not need the aid of findings . . . on the ground that the error is not substantial in the particular case." *City of Phx. v. Consol. Water Co.*, 101 Ariz. 43, 45, 415 P.2d 866, 868 (1966) (citing *Hurwitz v. Hurwitz*, 136 F.2d 796, 799 (D.C. Cir. 1943)).

¶13 Here, Mother argued in her post-trial motions that the trial court's findings were insufficient only with regard to the requested upward deviation, the basis for calculation of Father's parenting days, and the cost of health insurance for the children.[4] However, we find the court's determination regarding the cost of health insurance, undoubtedly adopted from the concurring submissions of the parties, to be so clear that we do not need the aid of findings. *See infra* Part II(B)(4). Any purported error regarding this issue is therefore not substantial in this case and waived. *See Consol. Water*, 101 Ariz. at 45, 415 P.2d at 868. Moreover, because she failed to pursue her request for specific findings on the remaining factors, "she may not be heard to complain to this court" about their sufficiency. *Patterson v. Patterson*, 63 Ariz. 499, 502, 163 P.2d 850, 851 (1945).

¶14 Accordingly, we only address the sufficiency of the trial court's findings with regard to Mother's requested upward deviation and Father's parenting days. On the remaining matters, we presume the court found every fact necessary to support its judgment, and must affirm its order if any reasonable construction of the evidence justifies the decision. *Neal v. Neal*, 116 Ariz. 590, 592, 570 P.2d 758, 760 (1977) (citing *Porter v. Porter*, 67 Ariz. 273, 282, 195 P.2d 132, 137-38 (1948), and *Myrland v. Myrland*, 19 Ariz. App. 498, 504, 508 P.2d 757, 763 (1973)). We further presume that the trial court knows the law and applies it correctly. *Fuentes v. Fuentes*, 209 Ariz. 51, 58, ¶ 32, 97 P.3d 876, 883 (App. 2004) (citing *State v. Trostle*, 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997)). Where the court chooses to make specific findings, we defer to those findings "unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of

---

[4] As discussed below, the remainder of Mother's motion simply argues the trial court erred in its interpretation of the evidence. *See infra* Parts VI and VII.

witnesses." *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5, 12 P.3d 1203, 1205 (App. 2000). Findings of fact are "clearly erroneous" when "'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Park Cent. Dev. Co. v. Roberts Dry Goods, Inc.*, 11 Ariz. App. 58, 60, 461 P.2d 702, 704 (1969) (quoting *Merryweather v. Pendleton*, 91 Ariz. 334, 338, 372 P.2d 335, 338 (1962)). It is with these principles in mind that we examine the substance of Mother's arguments.

## II.     Child Support Order

**¶15**          We review an award of child support for an abuse of discretion. *Cummings v. Cummings*, 182 Ariz. 383, 385, 897 P.2d 685, 687 (App. 1994). The trial court abuses its discretion if the record lacks competent evidence to support its decision, *Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999), or the court made "an error of law in the process of exercising its discretion." *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2, 118 P.3d 621, 622 (App. 2005). We review *de novo* the interpretation of the statutes and guidelines governing child support calculations. *Patterson*, 226 Ariz. at 358, ¶ 4, 248 P.3d at 206.

### A.     Change in Circumstances Justifying Modification

**¶16**          Mother argues the trial court failed to make an initial finding of a substantial and continuing change justifying modification of the child support order. *See* A.R.S. § 25-327(A) ("[A]ny decree respecting maintenance or support may be modified or terminated only on a showing of changed circumstances that are substantial and continuing . . . ."). She does so despite identifying several significant changes in the parties' circumstances within her own brief, avowing under oath within her petition for modification that "there has been a substantial and continuing change in financial circumstances of the parties," and asserting affirmatively within her pretrial memorandum that a modification of child support was appropriate. Therefore, her argument that a substantial and continuing change warranting modification had not occurred is wholly unconvincing.

**¶17**          Moreover, "the decision whether changed circumstances exist to warrant modification of an award is within the sound discretion of the trial court." *Cummings*, 182 Ariz. at 387, 897 P.2d at 689 (citing *Brevick v. Brevick*, 129 Ariz. 51, 52, 628 P.2d 599, 600 (App. 1981)). Here, reasonable evidence supports a finding of a substantial and continuing change. Since the prior child support order was entered in May 2010, both parties reported changes to their income, one of their minor children reached the

age of majority, and Father relocated to another state. Additionally, a fifteen percent variation between the existing child support order and the requested amount is considered evidence of a substantial and continuing change of circumstances, *see* Guidelines § 24(B), and the court's order here resulted in a 47% variation. Each of these changes, individually, likely supported recalculation of the child support award, and we find no abuse of discretion in the court's apparent acceptance of the avowals of the parties that their circumstances had changed.

## B. Child Support Calculation

**¶18** Mother next contends the trial court erred in its calculation of the child support award. Specifically, she argues the record lacks evidence to support the various factors used by the court to calculate the presumptive child support obligation, including the parties' respective incomes, Father's parenting time, and health insurance premium payments for the minor children. We review these factual issues for an abuse of discretion. *Hamblen v. Hamblen*, 203 Ariz. 342, 347, ¶ 25, 54 P.3d 371, 376 (App. 2002) (citing *Kelsey v. Kelsey*, 186 Ariz. 49, 53, 918 P.2d 1067, 1071 (App. 1996)). "The trial court is in the best position to judge the credibility of the witnesses, the weight of evidence, and also the reasonable inferences to be drawn therefrom." *Goats v. A.J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 171, 481 P.2d 536, 541 (1971). We will therefore not reweigh the evidence or second guess the trial court's interpretation where reasonable evidence supports the decision.

### 1. Mother's Gross Income

**¶19** The first step under the Guidelines is to determine the gross income of each parent. Mother argues the trial court abused its discretion by adopting the average monthly income reflected in her 2012 tax return because it included funds she received from a one-time sale of stock.

**¶20** Gross income is broadly defined to include "income from any source, *and may include*, but is not limited to, income from salaries, wages, . . . [and] *capital gains* . . . ." Guidelines § 5A (emphasis added); *see also Cummings*, 182 Ariz. at 386, 897 P.2d at 688 (noting there is no statutory limitation on "the items that the court may consider in determining a parent's 'financial resources'"). Although we agree with Mother that "[t]he Guidelines do not declare that every capital gain is gross income for child support purposes," *Burnette v. Bender*, 184 Ariz. 301, 304, 908 P.2d 1086, 1089 (App. 1995), *superseded by statute on other grounds as recognized in Myrick v. Maloney*, 23 Ariz. 491, 494, ¶ 8, 333 P.3d 818, 821 (App. 2014), it is within the

discretion of the trial court to make the determination on a case-by-case basis. *Id.* at 305, 908 P.2d at 1090 (holding that "in some cases" a capital gain may not be representative of gross income).

¶21 Alternatively, it is not just the non-custodial parent who has a legal duty to support his children. *See Little*, 193 Ariz. at 521, ¶ 6, 975 P.2d at 111 ("[A] parent has a legal duty to support his or her biological or adopted children."); *see also* Guidelines § 2(E) (noting even a custodial parent may be liable for child support). Thus, the trial court is authorized to "impute income to [a] parent, up to full earning capacity, if the parent's earnings are reduced voluntarily and not for reasonable cause." *Little*, 193 Ariz. at 521, ¶ 6, 975 P.2d at 111; *see also* A.R.S. § 25-320(N) (creating presumption "that a parent is capable of full-time employment at least at the applicable state or federal adult minimum wage"); Guidelines § 5(E) (discussing imputation of income where "parent is unemployed or working below his or her full earning potential . . . voluntarily and not for reasonable cause"). The court may attribute income based upon its assessment of a parent's educational level, prior work experience, and earning capacity. *See, e.g., Taliaferro v. Taliaferro*, 188 Ariz. 333, 336-37, 935 P.2d 911, 914-15 (App. 1996) (affirming child support award based upon income attributed to unemployed parent who had a college degree, prior experience in accounting and computer programming, and fairly solid work history for many years); *Williams v. Williams*, 166 Ariz. 260, 266, 801 P.2d 495, 501 (App. 1990) ("Based upon the testimony regarding the husband's past earning history and his future earning capacity, we do not believe that the trial court erred in attributing income to the husband in the amount of $4,000 per month.").

¶22 To the extent the trial court attributed income to Mother, it implicitly found she had not provided adequate bases for earning less than her full income potential.[5] Indeed, the court explicitly found Mother "ha[d] not fully disclosed her income to the Court," and identified conflicting evidence on the issue that could support a gross monthly income of anywhere from $684 to $6,000 per month. Implied within the court's order

---

[5] Although Mother suggests on appeal the children's needs prevented her from devoting herself to a career, it was within the court's discretion to reject this testimony, particularly in light of the lack of documentary evidence to support Mother's claims and the parties' prior agreement that none of their children had special needs. *See State v. Estrada*, 209 Ariz. 287, 288, ¶ 2, 100 P.3d 452, 453 (App. 2004) ("[T]he trial court, not this court, determines the credibility of the witnesses.") (citing *State v. Ossana*, 199 Ariz. 459, 461, ¶ 7, 18 P.3d 1258, 1260 (App. 2001)).

is the logical conclusion that, had Mother made efforts to obtain and maintain employment nearer her full income potential, it would have been unnecessary to cash in the stocks and bonds that resulted in the capital gains to her. This is a reasonable interpretation of the evidence and within the court's discretion.

¶23        Mother also complains the trial court abused its discretion in considering financial information from 2008, rather than more recent information, in determining the amount of income to attribute to her. However, the 2008 information, contained within the court's record, is indicative of Mother's historical earning capacity and highly probative in determining how much income to attribute to her. *See Williams*, 166 Ariz. at 266, 801 P.2d at 501) (finding no error in calculation of income attributed to parent based, in part, upon "past earning history and . . . future earning capacity"). Explicitly recognizing Mother had not fully disclosed her income, the court gleaned from its own record Mother's prior assertions of her income potential. It was not error to do so.

¶24        The record reflects Mother previously admitted she had been capable of earning $6,000 per month five years prior. She provided no testimony or other evidence at trial to suggest this figure was inaccurate or no longer feasible. She has a college degree, is six to twelve credits short of obtaining a master's degree, and testified she would receive a paralegal certificate the week after the evidentiary hearing. The trial court was well within its discretion, based upon Mother's education and prior asserted earning capacity of $6,000 per month, to assign Mother a modest income of $2,482.50 per month. We find no abuse of discretion in the calculation of Mother's gross income.

### 2. Father's Income

¶25        Mother also argues the trial court erred in failing to include expense reimbursements, commissions, and "household expenses offset through financial contributions of [his] spouse" in its calculation of Father's gross income. Instead, the court adopted the monthly income of $8,809.33 per month, as reported in Father's 2012 W-2 form. Mother further contends allowing Father to demonstrate his income through recent pay stubs resulted in "an unequivocal and unjust mathematical/analytical method of computation" of Father's income, and that the computation method for determining the parties' income "should be similar, if not identical." Effectively, Mother argues that if the trial court used tax filings to decide her income, it was required to use tax filings to decide Father's. We find no error.

¶26　　　　First, pursuant to the Guidelines, "[e]xpense reimbursements or benefits received by a parent in the course of employment . . . shall be counted as income if they are significant and reduce personal living expenses." Guidelines § 5(D). Implicit in the trial court's ruling is a finding that Father's expense reimbursements are either insignificant or do not act to reduce his personal living expenses.

¶27　　　　Mother argues "some of F[ather's] food costs, travel expenses, entertainment, lodging and extra items are paid for through substantial and consistent reimbursements from his employer," as demonstrated by his bank statements, which show his expenses exceeded his claimed income. Father did testify he is sometimes reimbursed by his employer for expenses incurred in entertaining clients. These are not personal living expenses. The only other evidence of an employer-paid expense was an approximately $190 per month lease on Father's vehicle. This amount represents only two percent of Father's gross income, and it would not have been unreasonable for the trial court to conclude the sum was insignificant. Additionally, Father's bank statements are consistent with his testimony that he is having difficulty paying his bills, typically reflecting only a small balance at the end of each month. Accordingly, the court did not err in excluding additional sums from its calculation of Father's income.

¶28　　　　Second, there is no indication the trial court ignored Father's commissions in its calculation of his gross income. To the contrary, Father testified in 2012 he was paid $90,400 per year in salary and received approximately $11,000 in commissions. The court's calculation of Father's income, when annualized, totaled $105,712 and reflected the consideration of both salary and commissions. We find no error.

¶29　　　　Third, Mother is correct that Arizona law permits consideration of a third party's contributions to household expenses in its income calculation. *See* A.R.S. § 25-320(D)(2), (5) (directing consideration of the "financial resources and needs" of both parents); *In re Marriage of Pacific*, 168 Ariz. 460, 466-67, 815 P.3d 7, 13-14 (App. 1991) ("[T]he trial court may only consider a current spouse's income to the extent that it defrays a parent's expenses."). However, while Father testified his current spouse contributes to household expenses, the record is devoid of any evidence regarding her income or the amount of her contributions. Without this information, it was not possible for the trial court to reasonably determine the amount of any appropriate offset to Father's living expenses, and it did not abuse its discretion on this record.

¶30 Finally, we reject Mother's argument that the trial court's "method for determining income for both parties should be similar, if not identical" or was otherwise improper. Given the myriad of income sources and possible financial support circumstances, "one size" does not fit all in the course of calculating child support, and the court is thus afforded broad discretion in these matters. *See, e.g.*, *In re Marriage of Robinson*, 201 Ariz. 328, 334-35, ¶ 17, 35 P.3d 89, 95-96 (App. 2001) (acknowledging "broad discretion accorded trial courts in ordering child support") (citing *Standage v. Standage*, 147 Ariz. 473, 476, 711 P.2d 612, 615 (App. 1985)). This includes choosing the appropriate method to calculate income, which may necessarily vary by the evidence and circumstances presented to the court. *See generally id.* at 334, ¶ 16, 35 P.3d at 95 (acknowledging numerous methods available to value stock options and declining "to prescribe a single method for all cases or a particular method for this case" given the variety of factors to be considered).

¶31 As long as the trial court's method of calculating income is reasonable under the circumstances, and consistent with the policies and purposes of the Guidelines, there is no error. *See id.* Under the circumstances, it was not an abuse of discretion to adopt Father's most recent income information from his 2012 W-2 form while adopting Mother's most recent income information from her 2012 federal income tax return.

### 3. Adjustment for Parenting Time

¶32 Mother argues the trial court abused its discretion in crediting Father with "more parenting days per year than he actually uses" and failing to provide a basis for attributing him fifty parenting days per year.

¶33 Although it is apparent the trial court credited Father with parenting time somewhere between (a) that agreed upon by the parties and memorialized in their parenting plan, and (b) that established by past practices, *see* Guidelines § 11 (directing the court to "determine the total annual amount of parenting time indicated in a court order or parenting plan or by the expectation or historical practice of the parents"), the court did not explain its reasoning in doing so, and we are in no position to guess as to what the reasoning may have been. Because Mother properly objected, and preserved her objection, to the sufficiency of the court's findings as to this factor, *Elliott*, 165 Ariz. at 135, 796 P.2d at 937, we remand for additional findings regarding the calculation of Father's parenting days.

#### 4.      Adjustment for Health Insurance

**¶34**      Mother also argues the trial court abused its discretion in crediting Father with $270 per month for the cost of health, dental and vision insurance for the children because the "actual" amount paid is $99.73 per month.  Despite Mother's representation, the "actual" cost of health insurance is far from clear, with conflicting evidence regarding the cost for "family coverage," whether Father is responsible for his own insurance premiums or they are employer-sponsored, whether coverage of Father's wife is included within the premium amount alleged, and whether a greater percentage of the premiums are attributable to coverage for children as opposed to adults.

**¶35**      What is clear from the record, however, is that each party prepared and admitted into evidence proposed child support worksheets, each of which reflects a credit of $270 per month for the cost of health, dental and vision insurance.  Although Mother properly preserved and argued the issue of the sufficiency of findings as to this factor, we do not "need the aid of findings" in this case, *Consol. Water*, 101 Ariz. at 45, 415 P.2d at 868, where it is readily apparent the court adopted the representations — and apparent agreement of the parties — as reflected in their otherwise opposing child support worksheets.  We find no error on this basis.

### III.      Upward Deviation

**¶36**      With regard to her request for an upward deviation of the child support award, Mother argues, without citation to legal authority, that because "an upward deviation was already in effect, and ha[d] always been in effect . . . it should have been F[ather's] burden to show that these factors were no longer valid, as opposed to being M[other's] burden to show that these factors were still relevant ."  Therefore, she asserts, the trial court lacked justification to reject the prior finding that deviation was appropriate.  Mother also argues the court's findings are insufficient to support its denial of the request for upward deviation.

**¶37**      By statute, "[t]he party seeking a sum greater [than the presumptive amount] shall bear the burden of proof that the needs of the children require a greater sum."  Guidelines § 8; *Nash v. Nash*, 232 Ariz. 473, 478, ¶ 18, 307 P.3d 40, 45 (App. 2013).  Although Mother correctly notes the *Nash* court was considering an original child support order, rather than a modification, there is no reason to apply a different standard.  Each time a modification of child support is sought, the sum must be calculated based upon its own, then-existing merit.  Where a party must establish, as a

prerequisite to modification, a substantial and continuing change in circumstances, *see* A.R.S. § 25-327(A), the trial court appropriately considers anew the propriety of any upward deviation. The party seeking deviation must provide support for it, and in the absence of evidence illustrating the propriety of a deviation, the court simply orders the presumptive amount.

**¶38**      Mother also argues the trial court failed to give "due consideration" to her request for deviation, and further suggests the court erred in basing its denial in "the[] finding that she had failed to show 'how enhanced funds would support the life of the minor child.'"  We disagree. An upward deviation is considered "on a case by case basis," after considering a variety of non-exclusive factors.  Guidelines §§ 8, 20. However, a deviation may be applied *only* upon a finding that strict application of the Guidelines is inappropriate or unjust, *see* Guidelines § 20(A)(1), and when applying the Guidelines, the "paramount factor" a court must consider is the best interests of the child.  *Engel v. Landman*, 221 Ariz. 504, 513, ¶ 38, 212 P.3d 842, 851 (App. 2009) (citing *Little*, 193 Ariz. at 522, ¶ 12, 975 P.2d at 112)).  A party's failure to establish that increased funds would serve the best interests of the child is therefore sufficient, alone, to defeat a deviation request.

**¶39**      Here, the trial court specifically found "[Mother]'s evidence is inadequate as it does not relate back to how the increased funds, if they were Ordered, would enhance the life of the minor child and, thus, be in the best interest of the minor child[ren];" "[Mother]'s evidence is equivocal," open to the possibility that "the minor children receive all of the 'additional items' that an upward deviation would provide;" and "[Mother] failed to establish [what] is deficient with the payment of the presumptive Basic Child Support Amount."  It further found Mother's evidence was "largely . . . confined to one of the approximately fifteen (15) factors that the Court is directed to consider."  These findings are a reasonable interpretation of Mother's testimony, reflect careful consideration of the appropriate factors, and are entitled to deference where, as here, there is reasonable support in the record.  *See Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003) (citing *Horton v. Mitchell*, 200 Ariz. 523, 526, ¶ 13, 29 P.3d 870, 873 (App. 2001)). These findings amount to an inability to determine that application of the Guidelines was inappropriate or unjust, and are sufficient to support the denial of Mother's request for an upward deviation of the child support award.  We therefore find no error.

**IV.    Life Insurance Information**

¶40        Mother argues the trial court erred in "not ordering (and not sanctioning) F[ather] to provide proof of continued maintenance of two life insurance policies" intended to secure his child support obligation and originally ordered within the decree of dissolution.  Mother does not argue the proceeds and premiums of these policies are relevant to the calculation of Father's child support obligation, but instead requested Father be required to provide such proof "as part of his support obligation." Notably, Mother presented this issue for the first time in her pretrial statement, and did not raise it again until her reply to her post-trial motions.

¶41        Mother apparently seeks to broaden the subject matter of the May 2013 evidentiary hearing to include enforcement of the divorce decree requiring Father to maintain this insurance.  However, a litigant in any action is entitled to fair notice of what is being sought of him.  *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6, 189 P.3d 344, 346 (2008). Moreover, the rules specifically provide that to enforce a prior family court order a person "shall file a petition with the clerk of the court setting forth with specificity all relief requested."  Ariz. R. Fam. L.P. 91(A) ("The petition shall indicate, at a minimum, . . . the relief sought."); *see also* Ariz. R. Fam. L.P. 91(H) (requiring petition for post-decree relief not specifically addressed elsewhere "set[] forth detailed facts supporting the requested relief").

¶42        Mother's petition requested modification of child support and parenting time, sole custody and decision-making authority of the children, and an award of attorneys' fees.  The trial court did not have authority to expand the scope of the hearing beyond that sought within either party's petition or grant relief in excess of what had been requested, could not properly entertain evidence in regard to a matter not properly before it, and did not err in declining her belated requests to include the newly-raised life insurance issue into the proceedings.  *See, e.g.*, *Villalba v. Villalba*, 131 Ariz. 556, 558, 642 P.2d 901, 903 (App. 1982) (vacating *sua sponte* the trial court's order dissolving marriage where petition had only requested legal separation).  Had Mother sought to enforce a provision of the decree of dissolution, due process mandated it be properly pleaded and served upon Father in conformity with the Arizona Rules of Family Law Procedure, so he could prepare to address the allegations at a scheduled hearing.  In the absence of these procedural prerequisites, neither Father nor the court could be prepared to address the issue, and due process would give way to litigation by ambush.  This is not the law and we reject Mother's suggestion otherwise.

## V.     Attorneys' Fee Award

**¶43**         Mother asserts the trial court abused its discretion in denying her request for attorneys' fees under A.R.S. § 25-324(A), and that she is entitled to an award of fees based solely upon the "huge disparity of income." We will not disturb a trial court's order declining a fee award under A.R.S. § 25-324 absent an abuse of discretion. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36, 250 P.3d 1213, 1221 (App. 2011) (citing *In re Marriage of Berger*, 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App. 1983)).

**¶44**         A party may be ordered to pay the other's attorneys' fees and costs "from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken through the proceedings." A.R.S. § 25-324(A). Both Mother and the trial court rely upon a body of case law suggesting that the sole consideration in awarding fees in a domestic relations matter is a comparison of the parties' resources. However, this Court recently clarified that those cases predate the 1996 amendment to A.R.S. § 25-324, which added a second factor to consider: the reasonableness of the parties' positions. *Myrick*, 235 Ariz. at 494, ¶ 8, 333 P.3d at 821 (citing 1996 Ariz. Sess. Laws, ch. 145, § 9). Moreover, "as the plain language of § 25-324(A) makes clear, a trial court has the discretion to deny a fee request even after considering both statutory factors." *Id.* at ¶ 9 (citing A.R.S. § 25-324(A), and *Alley v. Stevens*, 209 Ariz. 426, 429, ¶ 12, 104 P.3d 157, 160 (App. 2004)).

**¶45**         Here, the trial court denied Mother's request for attorneys' fees because it "c[ould] not reliably assess [Mother]'s income." As previously noted, this conclusion is reasonable given the conflicting information suggesting her income ranged anywhere from $684 to $6,000 per month. Even if this finding were in error, the ruling is further supported by evidence that Mother was awarded a substantial cash payment in the divorce decree, of which $160,000 remained at the time of trial. Thus, substantial evidence supports a finding that Mother's financial resources "are clearly ample to pay fees" of $7,000 to her attorney. *Roden v. Roden*, 190 Ariz. 407, 412, 949 P.2d 67, 72 (App. 1997), *superseded by statute as stated in Myrick*, 235 Ariz. at 494, ¶ 8, 333 P.3d at 821. We find no abuse of discretion on these facts.

## VI.    Motion for New Trial

**¶46**         Mother's motion for new trial asserted three grounds for relief, alleging the trial court: (1) improperly placed the burden of establishing the need for an upward deviation on Mother; (2) erred in

considering a one-time sale of stock as part of Mother's gross income; and (3) failed to make specific findings to support its calculation of parenting days or the cost of health insurance. "We review orders denying motions for new trial for an abuse of discretion." *Pullen v. Pullen*, 223 Ariz. 293, 296, ¶ 10, 222 P.3d 909, 912 (App. 2009).

**¶47** The first two issues have been addressed in Parts II(B)(1) and III above, and we find no error. As to the third, we agree the trial court erred in failing to set forth its reasoning as to the parenting days allotted Father. *See supra* Part II(B)(3). The proper remedy is not, however, a new trial, but rather, remand for additional findings. *Miller v. McAlister*, 151 Ariz. 435, 437, 728 P.2d 654, 656 (App. 1986).

## VII. Motion to Amend Findings

**¶48** Mother asserts the trial court erred in denying her motion to amend the child support order to:

> (1) provide credit to Father of no more than 10 parenting days; (2) provide Father with a credit for health insurance for solely the minor two children in the correct amount of $99.73; (3) determine the correct amount of income for both parties; (4) find there is a disparity in income between the parties; and (5) find Father needs to comply with the requirements of providing proof of life insurance to secure his child support obligations.

She argues the court's findings otherwise are "contrary to the actual evidence submitted at trial." We review denial of a motion to amend a judgment for an abuse of discretion. *See Mullin v. Brown*, 210 Ariz. 545, 547, ¶ 2, 115 P.3d 139, 141 (App. 2005) (citing *Hutcherson v. City of Phx.*, 192 Ariz. 51, 53, ¶ 12, 961 P.2d 449, 451 (1998)). Here, we find none.

**¶49** Mother may disagree with the trial court's interpretation of the evidence, but its findings regarding the parties' gross income and the cost of health insurance premiums, and its inability to accurately assess a disparity of income between the parties, are supported by substantial evidence, and Father's obligation to provide proof of life insurance was not properly before the court. Although we remand for further findings regarding the reasoning in allotting Father fifty days of parenting time, we cannot agree upon the record before us that the court erred in refusing Mother's requests within her motion to amend — not for additional findings, but that Father be allotted zero days of parenting time. A factual dispute, perpetuated after the close of evidence, does not require

amendment of a judgment. *Kauzlarich v. Bd. of Trustees of Oak Creek Sch. Dist. No. 16, Yavapal Cnty.*, 78 Ariz. 267, 272, 278 P.2d 888, 892 (1955) ("It is an unbroken rule of this court that where the trial court renders a judgment upon conflicting evidence . . . , if there is substantial evidence to support the judgment, this court will not interfere therewith.") (citation omitted).

**CONCLUSION**

**¶50**　　　For the foregoing reasons, we affirm the order of the trial court, but remand for additional findings of fact regarding its allotment of parenting days to Father. We leave to the discretion of the trial court whether additional evidence need be taken.

**¶51**　　　Mother requests her attorneys' fees and costs incurred on appeal pursuant to A.R.S. §§ 12-349 and 25-324. The prerequisites to an award of fees under A.R.S. § 12-349 are not present. Section 25-324(A) is applicable but, in our discretion, we decline Mother's request.



Ruth A. Willingham · Clerk of the Court
FILED: ama